Sullivan *v.* Lewiston Institution of Savings.

JOHN SULLIVAN *versus* LEWISTON INSTITUTION OF SAVINGS.

Officers of savings institutions are to be held to the exercise of reasonable care and diligence.

In paying money upon the presentment of a deposit book, reasonable care and diligence do not necessarily require the disbursing officer of a savings institution to demand strict proof of the identity of the depositor.

The plaintiff made a deposit in the defendant institution, received a book of deposit, containing a copy of its by-laws which, in accordance with their provisions, he thereupon "subscribed and thereby signified his assent to," and which provided that "all deposits shall be entered in a book to be given the depositor, which shall be his voucher and the evidence of his property in the institution," and that "the money of any depositor may be drawn either personaily, or by witnessed order, in writing, of the depositor, but no money shall be paid to any person without the production of the original book, that such payment may be entered therein," and that "the institution will not be responsible for loss sustained when a depositor has not given notice of his book being stolen or lost, if such book be paid in whole or in part on presentment." Subsequently the depositor's book was stolen, presented and paid by the disbursing officer of the institution in good faith. In an action by the depositor to recover the deposit; — *Held,* that, if the disbursing officer, using reasonable care and diligence, but lacking present means of identifying the depositor, pay *bona fide* on presentation of the book by one apparently in the lawful possession of it as the owner thereof, the institution has a right to rely upon the contract of the depositor safely to keep the evidence of his claim or make known its loss before it is presented for payment.

ON FACTS AGREED.

ASSUMPSIT to recover two hundred and twenty-eight dollars and thirty-eight cents, deposited by the plaintiff with the defendants, Oct. 31, 1866.

The defendant corporation was chartered and organized in 1856. Among their by-laws are the following : —

1. "The trustees having undertaken to conduct the institution solely to promote the interest of the community, shall never receive any emoluments, but may allow a reasonable compensation to the treasurer, and such other officers as may be found necessary."

2. "On making the first deposit, the depositor shall be required to subscribe, and thereby to signify his assent to, the regulations and by-laws of the institution."

3. "All deposits shall be entered in a book to be given to the depositor, which shall be his voucher, and the evidence of his property in the institution." .

4. "The money of any depositor may be drawn either personally, or by the witnessed order, in writing of the depositor, or by letter of attorney; but no money shall be paid to any person without the production of the original book, that such payment may be entered therein."

5. "As the officers of the institution may be unable to identify every person transacting business at the office, the institution will not be responsible for loss sustained when a depositor has not given notice of his book being stolen or lost, if such book be paid in whole or in part on presentment."

It appeared that the plaintiff, on Oct. 31, 1866, deposited with the defendants the amount sued for, and at the same time subscribed the by-laws and regulations, by making his mark, and received a book of deposit containing the entry of deposit, and a copy of the by-laws and regulations; that one Edward O'Brien stole the book from the plaintiff's possession sometime between Dec. 25, 1867 and Jan. 25, 1868; that on Jan. 25, 1868, one Michael Locklan presented the book at the office of the defendants, and received thereon one hundred and sixty dollars; that on Feb. 8, following, one Timothy Locklan presented the book at the same place, received the balance, and surrendered the book; that none of the officers of the defendants personally knew the plaintiff or either of the Locklans, nor had any of them received any notice that the book had been stolen or lost; that, when payments were made, the disbursing officer supposed he was paying to the plaintiff, who the payees severally pretended to be.

It appeared also, that the plaintiff deposited the book and ninety dollars in money with his boarding house keeper, who kept the same in a trunk under lock and key; that the plaintiff saw it at Christmas, went to see it again sometime in February, and it was not in the trunk; that he did not

give the defendants any notice of the loss before the money was drawn, because he did not know of the loss; but notified them immediately upon learning the fact; that the plaintiff never authorized any one to draw the money; and that the treasurer told the plaintiff he was not in fault, and that the trustees would meet soon and they would probably pay him.

*C. Record,* for the plaintiff, cited *Wallis* v. *Lowell Inst. for Savings,* 7 Gray, 138; *Makin* v. *Inst. for Savings,* 19 Maine, 128; *same v. same,* 23 Maine, 350.

*W. P. Frye* and *J. B. Cotton,* for the defendants, cited *Jochumsen* v. *Suffolk Savings Bank,* 3 Allen, 87; *Heath* v. *Savings Bank,* 46 N. H., 78; 27 Conn., 234.

BARROWS, J. — When the plaintiff deposited his money with the Savings Institution, he subscribed the by-laws and articles of regulation, by making his mark, and received a book of deposit containing a synopsis of the by-laws, which provide, among other things — that, on making the first deposit, the depositor shall be required to subscribe, and thereby signify his assent to the regulations and by-laws of the institution — that all deposits shall be entered in a book, to be given to the depositor, which shall be his voucher and the evidence of his property in the institution — that the money of any depositor may be drawn, either personally or by his witnessed order in writing, or by letter of attorney, but no money shall be paid to any person without the production of the original book, that such payment may be entered therein; and further, that, "as the officers of the institution may be unable to identify every person transacting business at the office, the institution will not be responsible for loss sustained when a depositor has not given notice of his book being stolen or lost, if such book be paid in whole or in part on presentment."

The plaintiff left his book of deposit in the care of the keeper of the boarding house where he lived, and she kept it in her trunk. He saw it on the 25th of December, but,

on his going to look for it sometime in the following February, it was not to be found. It is now ascertained that one Edward O'Brien stole it sometime between the 25th of December and the 25th of January, on which day it was presented at the office of the Savings Institution by one Michael Locklan, who received thereon a portion of the money; and, on the 8th of February, before the discovery of the theft, it was again presented by one Timothy Locklan, who received the balance and surrendered the book.

It is not claimed, on the part of the plaintiff, that the officers of the Savings Institution were guilty of anything like gross negligence in paying the money to the parties presenting the book. None of them had notice of the loss. None of them personally knew the plaintiff or the Locklans, the second of whom artfully and successfully personated the first, and made reference to conversation had by the other with the treasurer when the book was first presented. We see in the special circumstances of the payment, as detailed and discussed in argument, no evidence even of want of ordinary care, unless the failure to require the party presenting the book to produce other evidence of his identity besides the possession of it, is to be so deemed.

In view of the inconvenience which it would be to the numerous depositors, if strict proof of the identity of each were required on every occasion when he might present himself with his book, and of the difficulty, if not impracticability of so perpetuating the proof of identity which might be offered, as to protect the common fund of all the depositors, which constitutes the sole capital of the institution, from depredation, the by-laws, above quoted, were adopted.

Being assented to and subscribed by each of the depositors when he makes his first deposit, they become incorporated into the contract between the depositor and the institution, and must not be overlooked in determining the respective rights and liabilities of the parties.

" The depositor is one party and the corporation another and different party, as well in essence as in name." " The

only connection between them is to be found in the stipulations to which they have mutually agreed." *Savings Inst.*, *in Equity*, v. *Makin & al.*, 23 Maine, 360.

What is the fair construction of these stipulations which are before us? The depositor undertakes to preserve the book which he receives, as the evidence of his claim,—to present or send it whenever he calls for a payment,—to give notice if it shall be stolen or lost,—or, failing to do so, to claim, as against the institution, nothing which shall have been paid in good faith and in the exercise of reasonable care, to any one presenting it.

On the other hand, a payment to the wrong person, upon presentment of the book, even before notice of loss, if it were presented under such circumstances or in such a manner as would tend to excite suspicion or put a man of ordinary prudence upon inquiry, would not exonerate the institution. Its officers are to be held to the exercise of reasonable care and diligence. If these officers, using such care and diligence, but lacking the present means of identifying the depositor, pay, upon presentation of the book by one apparently in the lawful possession of it as the owner thereof, the institution has a right to rely upon the contract of the depositor safely to keep the evidence of his claim, or to make known its loss before it is presented for payment. Any other rule would inevitably be productive of much vexation and delay, and not unfrequently of positive expense to many depositors, and would also subject the common fund of all to fraudulent claims that might be produced when the evidence of identity relied upon was no longer accessible. For the security of that fund, in cases like the present, the personal knowledge of the officers of the institution, or conclusive reliance upon the record in the book (where there has been reasonable vigilance upon the part of the officers to avoid deception) seems to be almost indispensable. The gratuitous intimation of the defendants' treasurer to the plaintiff, that, as he was not in fault, the

trustees would probably pay him, cannot avail to sustain the suit.

It would be matter of grave consideration for the trustees, whether they could make such payment from the funds of the institution with justice to the other depositors.

*Judgment for the defendant.*

APPLETON, C. J., WALTON, DICKERSON, DANFORTH and TAPLEY, JJ., concurred.