## CHARLES L. GIFFORD v. RUTLAND SAVINGS BANK.

*Savings bank.   By-laws.   Assent by depositor.   Negligence in*
*paying over deposits.*

1.   Although one of the by-laws provides that the depositor shall subscribe
his name to the signature book as a means of assenting to the rules and
conditions therein contained, such assent may be shown in other
ways, as that he received and kept his deposit book containing such
rules and conditions.

2.   A by-law of a savings bank providing that the institution will not be
responsible if money is paid to a person not entitled thereto upon
presentation of the deposit book, unless notice of the loss of such
book has been given, is reasonable and binding if assented to by the
parties.

3.   Such by-law will not excuse the bank if it pays the money under cir-
cumstances which ought to have aroused the suspicions of a reason-
ably prudent man.

4.   *Held*, that where the depositor had never been at the bank and was not
known to the officials, and they had never seen his signature, the
money having been sent for deposit by another person by letter, the
bank was not negligent in paying the amount on deposit to a thief,
who presented the book, said that the money had been sent by
letter, in answer to the question, and did nothing suspicious except
to write his name awkwardly.

General assumpsit for the amount of a deposit.   Plea, the
general issue with notice of special matter.   Heard upon an
agreed statement of facts at the September term, 1889, Rutland
county, Powers, J., presiding.   Judgment *pro forma* for the de-
fendant.   The plaintiff excepts.

The defendant was a savings bank located at Rutland having
between five and six thousand different depositors.

December 27, 1884, one Rogers sent a check to the defendant
for $150, with a letter directing that the amount be credited to
Charles L. Gifford, the plaintiff.   This was done upon the books

Gifford *v.* Rutland Savings Bank.

·of the company, and a deposit book issued and sent by mail to the plaintiff. Dec. 8, 1885, said Rogers sent another check for $250 with the plaintiff's book to the defendant, directing that $125 be credited to the plaintiff. This was entered upon the plaintiff's book, which was thereupon returned to him. Such was the deposit in question.

The plaintiff kept the book in his possession until Sept. 26, 1888, when it was stolen by his brother, who upon the next day. presented and received payment upon it under the following cir-·cumstances:

"On the 26th day of September, 1888, said George R. Gifford called at the banking house of the defendant and presented said book of the plaintiff to William M. Field, the president of the defendant, and asked for the money upon it. Mr. Field asked him if his name was Charles L. Gifford, and he said it was; he ·asked him then if he was the owner of said book, and he replied that he was. Field asked the young man how the money was deposited, and he replied that it was sent in a letter; he then ·asked him why he wanted to draw the money, and got reply that he was going away and wanted to use it. Mr. Field gave him ·something of a lecture on the subject of drawing his money and advised him to be prudent and saving. Mr. Field then made up the account of interest, amounting to $40.44 cents, and presented the book for receipt of money for signature, and the young man wrote the name of plaintiff. The signature attracted the attention of Mr. Field, and he looked at it, and said: "That is a pretty looking thing for an L," or "That is a pretty looking L." Thereupon the boy took the book back and changed the letter somewhat so as to more nearly resemble an L. Thereupon Mr. Field paid him the money, amounting to $315.44, and the man took the money and left.

The young man who drew the money was about twenty years old, somewhat tall and stooped slightly, and did not resemble the plaintiff, who is ten years or more older. The president of the bank had never seen the plaintiff and had never seen his signature or handwriting, and plaintiff had never been in the bank prior to payment to said George R. as aforesaid, and the young man who drew the money was a perfect stranger to him, and was not indentified by any person, and was not asked to pro-cure any indentification or questioned except as aforesaid, and

produced no letters or papers whatever except the deposit book which had been stolen by him from said trunk."

The deposit book was in the usual form. On the outside of the front cover were printed in noticeable letters, "Read this book and take care of it. If you lose or mislay it, give immediate notice to the bank, for if it gets into improper hands you may be defrauded."

In the back part of the book were printed the by-laws. Articles 11, 17 and 22 were as follows:

"ART. 11. All deposits shall be entered in the treasurer's books and duplicates given to each depositor, and each depositor on his first deposit, shall subscribe his or her name to the book kept for that purpose, and shall by that act be considered as assenting to and being bound by all the by-laws and regulations of the corporation."

"ART. 17. When any person shall receive either principal or interest, the original deposit book or voucher shall be produced, that the payment may be entered therein; but in case of sickness or absence the money may be paid to the written order of the depositor accompanied by the book."

"ART. 22. As the officers of the institution may be unable to identify every depositor transacting business at the office, the institution will not be responsible for loss sustained when a depositor has not given notice of his book being lost or stolen, if such book be paid in whole or part, on presentment."

*Joel C. Baker*, for the plaintiff.

The defendant became the debtor of the plaintiff to the amount of the deposit, *Ide* v. *Pierce*, 134 Mass. 260; *People* v. *Savings Institution*, 92 N. Y. 7; *Pope* v. *Savings Bank*, 56 Vt. 284.

This debt the defendant has not discharged. The fact that the amount has been paid to somebody else, not upon the direction of the plaintiff, is no defense. *People* v. *Smith*, 43 Ill. 219; *Graves* v. *Bank*, 17 N. Y. 205.

Article 11 of the by-laws provides that each depositor upon receiving his deposit book shall subscribe his name to it in sig-

nification of his assent to the conditions upon which the bank holds his money. This plaintiff never signed the book; hence he never assented to and is not bound by the conditions contained in it.

At all events the defendant was bound to exercise the greatest diligence in seeing that payment was made to the true depositor. *Reed* v. *Home Savings Bank*, 130 Mass. 443; *Lewis* v. *Lynn Inst. for Savings*, 148 Mass. 235.

The stipulation that the bank might pay to anyone presenting the book did not excuse it from the exercise of such diligence. *Kimball* v. *Norton*, 59 N. H. 1; *Allen* v. *Savings Bank*, 69 N. Y. 314; *Morse Banking*, 620 b.

Mere possession of the book does not authorize payment. *Smith* v. *Savings Bank*, 101 N. Y. 58.

The burden is upon the defendant to show payment under such circumstances as will constitute a defense. *Appleby* v. *Bank*, 62 N. Y. 12; 2 Greenl. Ev. 516; *Gray* v. *Gardner*, 17 Mass. 187; Whart. Neg. §477; *Parry* v. *Roberts*, 3 Ad. & El. 118; *Wiser* v. *Chesley*, 53 Mo. 547; *Barber* v. *Slade*, 30 Vt. 191; *Everts* v. *Bostwick*, 4 Vt. 349.

*Edward Dana*, for the defendant.

The rules and conditions printed in the plaintiff's deposit book formed a part of the contract upon which the defendant received and held the plaintiff's money. 2 Morse Bk. §620; *Eaves* v. *People's Savings Bank*, 27 Conn. 229; *Israel* v. *Bewery Sav. Bank*, 9 Daley 507; *Burrill* v. *Dollar Sav. Bank*, 92 Penn. St. 134; *Allen* v. *Williamsburg Sav. Bank*, 69 N. Y. 315; *Heath* v. *Portsmouth Sav. Bank*, 46 N. H. 78; *Donlon* v. *Prov. Ins. for Savings*, 127 Mass. 505; *Rice* v. *Dwight Mfg. Co.*, 2 Cush. 80.

The condition in the by-laws providing that the bank would not be responsible for loss sustained when a depositor has not

given notice of his book being lost or stolen, if such book be paid in whole or in part on presentation, is reasonable and binding. Morse Bk. §620 b.; *Burrill* v. *Dollar Sav. Bank*, 92 Penn. St. 134; *Schoenwald* v. *Metropolitan Sav. Bank*, 57 N. Y. 418; *Appleby* v. *Erie Co. Sav. Bank*, 62 N. Y. 12; *Donlon* v. *Prov. Inst. for Savings*, 127 Mass. 183; *Sullivan* v. *Lewiston Inst. for Savings*, 56 Me. 507; *Levy* v. *Franklin Sav. Bank*, 117 Mass. 448; *Goldrick* v. *Bristol County Sav. Bank*, 123 Mass. 320; *Israel* v. *Bavery Sav. Bank*, 9 Daly 507.

There was no negligence in making payment in this case. *Sullivan* v. *Lewiston Inst. for Savings*, 56 Me. 507; *Burrill* v. *Dollar Sav. Bank*, 92 Penn. St. 134; *Schoenwald* v. *Metropolitan Savings Bank*, 57 N. Y. 418; *Donlon* v. *Prov. Inst. for Savings*, 127 Mass. 183; *Sullivan* v. *Lewiston Inst. for Savings*, 56 Me. 507; *Goldrick* v. *Bristol County Savings Bank*, 117 Mass. 448; *Levy* v. *Franklin Savings Bank*, 117 Mass. 448; *Eaves* v. *People's Savings Bank*, 27 Conn. 229.

The opinion of the court was delivered by

ROWELL, J.   That the bank took plaintiff's deposits without requiring his assent to the by-laws by subscribing his name to the book kept for that purpose, as provided by the eleventh article, is not conclusive that he did not otherwise assent to them; for we do not regard that method of assent as intended to be the only method, but only one method.

The maxim that the express mention of one thing implies the exclusion of another is often excedingly helpful in the construction of contracts, but great caution is necessary in dealing with it, for, as said by Lord Campbell in *Saunders* v. *Evans*, 8 H. L. Cas. 729, it is not of universal application, but depends upon the intention of the parties as discoverable from the face of the instrument or the transaction.   Broom's Leg. Max. 653.   Williams, J., in *Eastern Archipeligo Co.* v. *The Queen*, 2 El. & Bl.

879, says it is by no means of universal nor conclusive applica-tion; and he gives instances of its non-applicability.

Now we discover nothing upon the face of this transaction that shows that it was the intention of these parties that plaintiff should be deemed to assent to the by-laws only by subscribing his name to said book; but quite the contrary appears. Both parties knew that plaintiff had not signed said book, but yet they continued to occupy to each other the relation that the deposits created, and presumably with the mutual intention that all the rights and incidents of that relation should attach to it, as it is not to be presumed that they or either of them expected or intended that the non-compliance with one by-law should nullify the whole, but rather that the matter should stand as though that by-law did not exist. Hence, by receiving and holding the deposit book as his voucher against the bank, with the by-laws printed in it, of which the case shows he had actual knowledge, and continuing his relation of depositor, he must be taken thereby to have assented to the by-laws, save the one that he knew was not complied with, and to have agreed to them as a part of the contract of deposit. And so it has been elsewhere held. *Heath* v. *Portsmouth Savings Bank*, 46 N. H. 78; (88 Am. Dec. 194); per Ellsworth, J., in *Eaves* v. *People's Savings Bank*, 27 Conn. 229; (71 Am. Dec. 59); *Goldrick* v. *Bristol County Savings Bank*, 123 Mass. 320.

The by-law based upon the difficulty of identifying depositors doing business at the bank, which provides that the institution will not be responsible for loss sustained when a depositor has not given notice of his book's being lost or stolen, if it is paid in whole or in part on presentation, has often been held to be a reasonable and proper regulation for the protection of the bank. See the cases *passim*.

But this by-law does not relieve the bank from the exercise of reasonable care; and payment to the wrong person on presentation of the book, even before notice of its loss, will not ex-

onerate the bank, if the attendant circumstances were sufficient to excite the suspicion of a prudent man and put him on inquiry. *Sullivan* v. *Lewiston Institution of Savings*, 56 Me. 507; (96 Am. Dec. 500;) *Kimball* v. *Norton*, 59 N. H. 1; (47 Am. Rep. 171;) *Levy* v. *Franklin Savings Bank*, 117 Mass. 448; *Appleby* v. *Erie County Savings Bank*, 62 N. Y. 12; *Allen* v. *Williamsburgh Savings Bank*, 69 N. Y. 314.

It is a rule of frequent application that one who has knowledge of facts sufficient to induce a prudent man to inquire in respect of other facts germane to the matter in hand, will be charged with knowledge of such other and further facts as he might have learned by diligent inquiry in the right direction. But it is competent to rebut the presumption of such ascribed knowledge by showing the existence of other and attendant circumstances of a nature to allay his suspicion and to lead him to believe that inquiry was not necessary.

A majority of the court think that the circumstances of this case are not such as to charge the bank with knowledge of any facts not learned at the time the money was paid.

The bank had not been notified of the loss of the book. The plaintiff had never been at the bank, and was not known to any of its officers. The thief was also unknown to them; but he came to the bank with the book in his possession, and that possession was apparently lawful; on inquiry he answered truly that the money was sent by letter for deposit, a statement well calculated to ward off suspicion, for the manner of sending, from its nature, was a fact peculiarly within the knowledge of those having to do with and interested in the deposit, and one that others would not be likely to know about.

Nor was there anything suspicious in the way the thief made the "L." Perhaps the plaintiff himself would have done no better. It is not suspicious that a man writes a name awkwardly. Many men write their own names that way, not to say illegibly.

Gifford *v.* Rutland Savings Bank.

Nor was the bank bound to require the thief to identify himself as the depositor further than he did by producing the book. There being no suspicious circumstances, the very terms of the by-law relieved it of that duty; and to require it would be to nullify the by-law, which is a part of the contract, and provides for just such a case as this.

*Judgment affirmed.*

Munson, J., did not sit, having been of counsel.