# COMMONWEALTH BANK OF BALTIMORE

*vs.*

# GEORGE GOODMAN.

*Savings banks: payments; forged orders; duty of bank. Prayers: "no evidence."*

A deposit account in a savings bank was opened by a depositor who could not read; the first deposit was made in his name by a friend, E. W.; she was given the bank book and signature card; she returned the card with the cross-mark of the depositor witnessed by herself; the depositor went repeatedly to the bank with E. W., and received payments made directly to him or to her, on presentation of the bank book and orders or receipts with his name or mark on them witnessed by her; whenever he went to the bank he was accompanied by her, and it was she who presented the book: *Held,* that under such circumstances it was no sign of negligence for the bank to honor orders or receipts presented by E. W., which, although forged, bore upon them the cross-mark of the depositor witnessed by the said E. W. as on the signature card. p. 459

Savings banks, in making such payments, are only bound to use ordinary care. p. 457

In reviewing the action of the trial court in refusing a defendant's prayer to take the case from the jury, on the ground of "no evidence," the Court of Appeals must assume the truth of all the evidence to support the plaintiff's contention. p. 460

*Decided April 26th, 1916.*

Appeal from the Superior Court of Baltimore City. (DUFFY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Robert Biggs* and *C. Arthur Eby,* for the appellant.

*John B. Deming* (with whom were *George Whitelock* and *W. Thomas Kemp* on the brief), for the appellee.

THOMAS, J., delivered the opinion of the Court.

This suit was brought by the appellee, George Goodman, against the Commonwealth Bank of Baltimore to recover the amount deposited in his account in the bank and alleged to have been paid out by the bank upon fraudulent and forged orders.

The declaration contains the common counts for money lent, money received and money found to be due on accounts stated, and three special counts. During the trial of the case in the Superior Court of Baltimore City, which resulted in a verdict and judgment in favor of the plaintiff for $690.73, the defendant reserved eight exceptions to the rulings of the Court on the evidence and the prayers.

The evidence shows that the plaintiff, a colored man, was employed for a number of years by Mrs. Jane S. Whitelock, of Mt. Washington, Baltimore County, at twenty dollars per month, and that after her death he was employed as coachman for her daughter, in Carroll County, Maryland. During Mrs. Whitelock's lifetime the plaintiff's wages were paid by checks, and each month he was given a check for one-half of his wages (ten dollars), drawn in favor of the Commonwealth Bank for account of George Goodman. After Mrs. Whitelock's death the checks were issued by the executors or trustees of her estate; the one for ten dollars, drawn in favor of the bank for account of George Goodman, was

mailed directly to the bank, and the other was mailed to Goodman in Carroll County. While in the service of Mrs. Whitelock, Goodman rented a room from James H. Webb, another colored man, at 917 North Eutaw street, where he kept his trunks and clothes and lived upon most friendly terms with Webb and his wife and daughter, Priscilla and Edith Webb. He was particularly fond of the daughter, Edith Webb, and on the 10th of August, 1908, he gave her two dollars with which to open a savings account for him in the Commonwealth Bank of Baltimore. Edith Webb, who was then about fifteen years of age, took the money to the bank and had an account opened in the name of the plaintiff. The bank gave her a bank book, and a signature card to be signed by the plaintiff and returned to the bank, and she returned the card to the bank signed as follows:

his<br>
"10137 X George Goodman.<br>
mark<br>
"Witness by Edith Webb.<br>
"Address: 917 N. Eutaw St."

The bank book was always in the possession of Edith Webb, and the plaintiff testified that he gave it to her to take care of for him, and that prior to Mrs. Whitelock's death when he received the checks for his monthly wages he gave the check payable to the bank to Edith Webb to deposit for him, and that he also gave her money to deposit. When he went to Carroll County to live he left his trunk and clothes in the room in Webb's house. He says he did not pay rent for the room after he went to Carroll County, but that he left his trunk and clothes in the room so that he would have a place to go whenever he was in Baltimore, and that he paid for the use of the room on such occasions, and that he left his bank book in the possession of Edith Webb in order that she might take it to the bank each month and have his check, which was sent to the bank, entered therein. During the years he was employed by Mrs. Whitelock he went to the

bank a number of times to draw some money. He could not tell how many times he went to the bank for that purpose, but did remember having withdrawn twenty dollars on March 5th, 1909, fifteen dollars on August 11th, 1909, and ten dollars and twelve dollars on two other occasions, and he states that he always took Edith Webb to the bank with him; that he took her the first time so she could identify him as the man to whom the account belonged, and that he never went to the bank after the fall of 1911.

The evidence also shows that nearly all of the money deposited and entered in the bank book of the plaintiff was paid out from time to time to Edith Webb on orders or receipts signed like the signature card referred to and presentation of the bank book, and Edith Webb testified that when the plaintiff was with her she immediately handed the money to him. Except in one instance, when the order was in the form of a letter, all of the orders or receipts were on blanks furnished by the bank and they were brought to the bank, signed as we have stated, with the bank book. In a few instances Goodman's mark on the order or receipt was witnessed by one of the officers of the bank. The plaintiff testified that he never authorized Edith Webb to make any withdrawals in his absence, and that he never made his mark on any of the orders or receipts on which the money was drawn without his knowledge. It further appears from the evidence that eight of the checks made payable to the bank for account of Goodman, amounting to $100.00, were only credited in Goodman's bank book to the amount of $25.00; that these eight checks were collected by the bank, and that some of them were endorsed by Edith Webb, but that not one of them bears the endorsement of George Goodman. Charles A. Nicholson, the teller of the bank who had charge of the savings department, was sick at the time of the trial, and his testimony was taken prior to the trial before a notary public. When shown two of the checks that were not entered in bank book of the plaintiff and did not bear his endorsement he testified that he would not have paid either

of them without Goodman's endorsement. It also appears from the evidence that in a number of instances the amount deposited was withdrawn the same day or on the day following.

The bank book issued to the plaintiff contained the following rules or regulations printed therein purporting to constitute the contract between the plaintiff and the bank:

> "Deposits entered in this book are not subject to check, but may be withdrawn at any time on order and presentation of the book, the Bank reserving the right to demand 30 days' notice, if it so desires.
>
> "Interest allowed at the rate of 3½ per cent. per annum on sums of five dollars and multiples thereof, for every calendar month that such sums remain on deposit.
>
> "Accounts closed within the four calendar months following date commencement receive no interest.
>
> "Interest will be computed to the 1st day of April and 1st day of October of each year and entered on depositors' books on and after the 10th day of the months above named.
>
> "Possession of the book of deposit shall be sufficient evidence of ownership thereof; and although the Bank will endeavor to prevent fraud on its depositors, yet all payments which shall be made by the Bank to any person producing the book of a depositor, shall be valid as against the depositor, and a full and effectual release thereof to the Bank.
>
> "Should a depositor lose the book, immediate notice thereof must be given to the Bank."

The defendant offered evidence to show that the bank exercised reasonable and ordinary care in paying out the money of the plaintiff; that the plaintiff authorized Edith Webb to draw the money in his account in the bank whenever she desired to do so, and to sign his name and witness his mark to orders or receipts for that purpose, and that he got the benefit of a large part of such withdrawals. Charles

A. Nicholson, the teller of the bank testified, that after the account was opened by Edith Webb the plaintiff came to the bank and told him that she "attended to all his business for him, and that whatever she did was all right." This evidence was corroborated by Edith Webb and others, but the plaintiff denied that he made any such statement or authorized Edith Webb to draw the money.

By-laws or regulations like those contained in the bank book of the plaintiff have been adopted by savings banks and have been upheld by the Courts as necessary for the protection of such banks. It is not contended by the appellant that the regulations referred to, which were printed in the bank book as the contract between the plaintiff and defendant, relieve the bank from its obligation to exercise ordinary care in paying out the money of a depositor, but the bank insists that in this case the burden was on the plaintiff to show that it did not exercise ordinary care and that he has failed to meet that burden. The rule of ordinary care on the part of the bank applicable to cases of this kind is clearly stated and its application illustrated in the cases cited in the extensive notes to *Kelley, Administratrix,* v. *Buffalo Savings Bank* (180 N. Y. 171), 69 L. R. A. 317, and *Hough Avenue Savings Bank* v. *Anderson* (78 Ohio St. 341), 18 L. R. A. (N. S.) 431. This rule does not deprive a savings bank of the protection of its contract with a depositor, but simply imposes upon it the consequences of its own negligence or want of ordinary care. 3 *Ruling Case Law,* pp. 706-709. It is said in 3*Ruling Case Law,* page 709: "As to what constitutes a negligent payment the only practical general rule to which savings banks can be safely held in such dealings is the rule of ordinary care, leaving it to be applied in the light of the special circumstances that characterize each separate case. The question of due care and diligence on the part of the bank is one of fact for the jury if the evidence is conflicting, and one of law if the evidence is undisputed, and can lead to but one

reasonable conclusion. When negligence is relied on, the burden of proving the issue is on the depositor."

The learned Court below granted the defendant's eighth prayer placing on the plaintiff the burden of showing that the bank did not exercise ordinary care, but rejected its first prayer which asserted that there was no evidence in the case legally sufficient to sustain that burden, and in reviewing this ruling we must assume the truth of all the evidence tending to support the plaintiff's contention.

As to the checks drawn in favor of the bank for account of the plaintiff which do not bear his endorsement and which were not placed to his credit there can be no question. The evidence shows that they were collected by the bank but were credited in the account of the plaintiff only to the extent of twenty-five dollars, and the teller of the bank, when shown two of these checks, testified that he would not have paid either of them without the plaintiff's endorsement. In the absence of evidence satisfactorily explaining the failure of the bank to credit these checks in the account of Goodman the plaintiff was clearly entitled to recover the amount not so credited.

In regard to the payments made by the bank to Edith Webb on presentation of the bank book and orders and receipts bearing the name of the plaintiff and his mark, witnessed by her or by one of the officers of the bank, we think the plaintiff has failed to show want of ordinary care on the part of the bank. According to the uncontradicted evidence in the case the bank account was opened by Edith Webb, and all of the deposits of money and checks prior to the time the plaintiff went to Carroll County were made by her; she was given the bank book and signature card; she took the signature card home and returned it to the bank after it had been signed by the plaintiff by making his mark, and his mark was witnessed by her; the plaintiff went to the bank with her on several occasions and received from the bank payments made by it, directly to him or to her, on presentation of the bank book and orders or receipts with his name

and mark on them witnessed by her; on other occasions he received payments from the bank on orders or receipts on which his mark was witnessed by one of the bank officers, and every time he went to the bank he took Edith Webb with him and she presented the bank book. Under such circumstances there was no reason why the officers of the bank should have suspected that any of the orders or receipts presented by Edith Webb were forged or fraudulent. On the contrary, the way in which the account was opened and deposits were made and the dealings of the plaintiff with the bank justified the officials of the bank in believing that he had implicit confidence in her and that the orders presented by her were genuine. The appellee contends that the manner in which the account was opened shows negligence on the part of the bank, and he urges that the bank should have required the mark of the plaintiff on the signature card to be witnessed by a third person, or have required the plaintiff to come to the bank and have his mark witnessed by one of its officers. That course, like many others that might be suggested, would doubtless have afforded some additional protection to the depositor, but *ordinary care* did not require the bank to adopt such a precaution, or to close all possible avenues to fraud. If the plaintiff trusted Edith Webb to the extent indicated, and was willing for the bank to accept the signature card with his mark witnessed by her why should the bank have hesitated to do so? The money could not be withdrawn without the bank book, and the bank had no reason to suppose that the plaintiff would leave his book in the possession of the person who happened to witness his mark on the signature card. There must be in large cities like Baltimore many instances of savings bank accounts of persons who can not read or write, and a greater number of accounts of persons who can not read or write English, and we see no reason why these accounts should not be opened in the way the plaintiff's account was opened. Institutions like the appellant are designed to encourage thrift and to offer facilities for saving to persons of limited means and

opportunity. To hold these banks to such a strict interpretation of the rule as that contended for by the appellee would in effect do away with the doctrine of *ordinary care* and compel them to exercise such a decree of caution as would necessarily deprive a large class of persons of the benefit of such institutions, and the very class to whom they render the greatest service. Nor do we find in the fact that the amounts deposited were in a number of instances withdrawn from the bank on the same day or the day following sufficient evidence of a want of ordinary care on the part of the bank. There is no evidence in the case to show that the officers of the bank knew that the plaintiff did not retain possession of his bank book, or that he did not know the condition of the account as disclosed by the entries in the book. They did know that the book was brought to the bank by Edith Webb when the checks or money were deposited and when the payments were made, but they had no reason to suppose that he had surrendered possession of it entirely or that he did not know of the condition of the account, and they had a right to assume that he would advise them of any irregularity in the withdrawals.

It follows from what we have said in reference to the checks drawn in favor of the bank for account of the plaintiff which do not bear his endorsement and which were not placed to his credit that there was no error in the rejection of the defendant's first prayer which sought to withdraw the case from the jury. The plaintiff's second prayer was not specially excepted to on the ground that there was no evidence legally sufficient to show that the defendant had failed to exercise ordinary care in paying out the money placed to the plaintiff's credit in his bank book, and in reviewing the ruling of the Court on that prayer we must, therefore, assume that there was such evidence, notwithstanding we have said in passing upon the plaintiff's first prayer that there was no evidence legally sufficient to show want of ordinary care on the part of the defendant in making such payments. We think the prayer properly defined ordinary care and was

free from any objection, other than the objection indicated which should have been raised by a special exception. There was no error in granting the plaintiff's third prayer. He was entitled to recover under the account for money received, &c., the amounts deposited and not placed to his credit in his bank book, except in so far as the checks for the same were paid to him or upon his authority. In other words the plaintiff was entitled to recover in this case all money received by the bank for his account, except so much thereof as was entered to his credit in the bank book and paid out by the bank without any negligence on its part and such sums as were paid to him, or upon his authority, on the checks drawn for his account but not entered in his bank book. The regulation in reference to withdrawals printed in the bank book only applies to deposits made in that book. There was no error in the rejection of the defendant's second and third prayers. In the second the Court was asked to instruct the jury that the negligence of the plaintiff in allowing his book to remain in the possession of Edith Webb directly contributed to his loss and that the verdict should be for the defendant, and the instruction asked for in the third prayer was that if the jury found that the conduct of the plaintiff in allowing his book to remain in the possession of Edith Webb was the direct cause of the loss complained of then their verdict should be for the defendant, even though they believed that the defendant was guilty of negligence in making the payments "from the account of the plaintiff." The suit was founded upon the contract between the plaintiff and the bank. So long as the bank, in good faith, and in the exercise of ordinary care, pays out the money of a depositor in accordance with the terms of its contract it is relieved of all liability for losses the depositor may sustain by reason of his negligence. But while the carelessness or negligence of the depositor, not known to the bank, can not impose upon the bank any higher degree of care, no amount of negligence on his part ought to relieve the bank of its duty to use ordinary care, and we

see no reason for the application of the doctrine of contributory negligence. The question was considered and, we think, properly disposed of in the case of *Chase* v. *Waterbury Savings Bank,* 77 Conn. 295, 69 L. R. A. 329, where the Supreme Court of Connecticut said: "But without deciding whether there was sufficient evidence to go to the jury upon the question of the plaintiff's negligence had that been a material inquiry in this case, we hold that the bank would not have been exonerated from liability for payments negligently made by its officers to Mrs. Keith, even if the jury could have properly found from the evidence that the plaintiff was guilty of the claimed negligence. * * * The question of contributory negligence is not involved in the case. If the bank officers failed to exercise ordinary care in making the payments to Mrs. Keith upon forged orders, the bank was liable to the plaintiff for the sums so paid. If the officers exercised such care, the bank was relieved from liability by the provisions of article 15 of its by-laws."

The defendant's sixth prayer was fully covered by its fifth, which was granted by the Court, and there was no error in its rejection. The defendant's seventh prayer properly presented its theory of the case in regard to the withdrawals of the money entered to the plaintiff's credit in his bank book, and to that extent was free from objection. But it ignored the deposits or checks for his account not entered in his bank book, and was objectionable on that ground and properly rejected. There is no exception in the record to the modification by the Court of the defendant's eighth prayer, but counsel for the defendant state in their brief that its omission was due to "inadvertence" in preparing the record, and that "it is agreed that the bill of exception shall cover the defendant's exception to said action of the Court." The prayer as presented to the Court instructed the jury that in arriving at a verdict they were not to consider the evidence of Miss Haile and Mr. Whitelock in reference to any proposed settlement by Edith Webb, Priscilla Webb or James Webb, or any evidence of the declarations of Edith Webb

that the withdrawals made by her were illegal or improper, or any evidence of Mr. Whitelock "as to the conversations had by him with Edith Webb, Priscilla Webb and James Webb with reference to said withdrawals. The Court modified the prayer to the extent of instructing the jury that they could consider said evidence in determining the credibility of Edith Webb, Priscilla Webb and James Webb. One of the questions of fact to be determined by the jury was, was Edith Webb authorized by the plaintiff to draw the money? The defendant had offered evidence tending to establish such authority, and the testimony of Edith Webb was to the effect that the plaintiff told her that she could draw the money whenever she desired to do so or needed it. In rebuttal, Miss Haile testified, over the objection of the defendant, noted in the seventh exception, that Edith Webb, in a conversation with her at Sykesville, said that "she realized that she had done wrong and she was perfectly willing to make it good in paying back so much each month." Edith Webb was not a party to the suit, and in order to make this evidence admissible as affecting her credibility a proper foundation for it should have been laid in the cross-examination of Edith Webb, which was not done. 2 *Poe, Plead. & Prac.*, (3rd Ed.), sec. 284. The modification of the defendant's eighth prayer, authorizing the jury to consider the evidence thus improperly admitted was erroneous, and it follows from what we have said in regard to that prayer that there was error in the rulings in the sixth and seventh exceptions.

The defendant was not injured by the evidence admitted in the second exception, but there was fatal error in the ruling on the evidence in the first exception. Counsel for the plaintiff asked Edith Webb on cross-examination if the Savings Bank of Baltimore did not refuse to pay a check for $45.00 which she took to the bank with Goodman's name signed to it, and she was required to answer the question over the objection of the defendant. We know of no possible theory upon which this evidence was admissible. The mere

fact that some other bank refused to pay a check presented by Edith Webb and signed by the plaintiff could not reflect upon the question of the degree of care exercised by the defendant in making the payments to her under the circumstances disclosed by the evidence. There was also error in the admission of the evidence referred to in the third exception. The statements of counsel for the plaintiff to Edith Webb did not reflect upon either of the issues in the case. The evidence referred to in the fourth exception ought not to have been admitted. There was no evidence in the case to show that the teller of the bank knew that Goodman could not read or write at the time he gave the signature card to Edith Webb. Questions asked an expert on cross-examination ought to be based upon facts proved and ought not to assume facts of which there is no evidence. There was no error in the rulings on the evidence referred to in the fifth exception. The Court properly refused to allow the witness to state whether the teller of a bank would be *"justified"* in paying out the money of a depositor under the circumstances stated in the question. The question whether the defendant bank was *justified* in making the payments to Edith Webb was one for the jury to determine under proper instructions of the Court, and the opinion of an expert on that subject was not admissible.

Because of the errors pointed out in the first, third, fourth, sixth, seventh and eighth exceptions the judgment appealed from must be reversed and case remanded for a new trial.

*Judgment reversed, with costs to the appellant and new trial awarded.*