## CAMPBELL v. SCHENECTADY SAV. BANK.

### (Supreme Court, Appellate Division, Third Department.   June 27, 1906.)

**1. BANKS AND BANKING—SAVINGS BANK—RULES OF BANK—CONTRACT WITH DEPOSITOR.**

A rule of a savings bank, stipulating that a payment to a party presenting a passbook shall be a valid payment of the deposit, adopted under Bank Law, Laws 1892, p. 1895, c. 689, § 113, providing that sums deposited with a savings bank shall be repaid to the depositor in such manner and at such times and under such regulations as the trustees shall prescribe, etc., and known to a depositor, is a part of the contract between the bank and the depositor.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Banks and Banking, §§ 1159–1161.]

**2. SAME—REPAYMENT OF DEPOSIT—NEGLIGENCE OF DEPOSITOR—EFFECT.**

Where a depositor in a savings bank was negligent in the care of the passbook by consenting that the same might be delivered to a third person, who, on presenting the passbook and checks in the depositor's name, obtained the deposit, the loss of the deposit resulted primarily from the depositor's negligence, and the bank was not liable unless its officers were negligent.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Banks and Banking, §§ 1162–1176.]

**3. SAME—NEGLIGENCE OF BANK—EVIDENCE.**

Where a savings bank paid a deposit to a person presenting the depositor's passbook and a check purporting to bear the signature of the depositor, the depositor was not prejudiced by a failure of the bank officials to make inquiries of the person presenting the passbook and check as to the reason why the depositor did not appear in person, on it appearing that the person presenting the passbook and check would have informed the bank officials that the depositor was living in her family and supported at her house and was ill.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Banks and Banking, §§ 1162–1176.]

**4. SAME.**

A rule of a savings bank provided that payments made to persons presenting a passbook should be deemed valid payments of the deposit. A depositor had knowledge of the rule. She went to the bank, accompanied by a niece, and drew out two sums. Her checks were signed by her making a mark, witnessed by her niece. Subsequently she gave her passbook to her attorney, who delivered the same to the niece, who presented the passbook to the bank, and checks purporting to have been signed by the depositor, and obtained money on them. When the first check was presented by the niece, reference was made to the signature book and to the former checks, and she was then asked if she saw plaintiff sign the check, and she replied that she did. The first money drawn by the depositor was about 14 months after her first deposit, and the second check was drawn about 14 months thereafter. The checks drawn by the niece were drawn in six months. *Held* insufficient to show negligence on the part of the bank, so as to make it liable to the depositor for the money paid.

Appeal from Trial Term.

Action by Ann Campbell against the Schenectady Savings Bank. From a judgment for plaintiff, and from an order denying a motion for a new trial on the minutes of the court, defendant appeals. Judgment and order reversed, and new trial granted.

The plaintiff, an old lady who could neither read nor write, deposited with the defendant, about January 3, 1901, $400. This deposit was made by her

and her attorney who was acting for and with her at the time. The rules of the bank, as required by law, were conspicuously posted in the bank and pasted in the depositor's book, which was given her and signed by her at the time; the seventh rule providing: "All payments made to persons presenting any passbook shall be deemed good and valid payments to the owners of the deposit evidenced thereby," unless notice of the loss or theft of the passbook is given to the bank. The ninth rule provides: "If the officers of the bank shall doubt the identity of any person presenting the passbook and claiming the deposit, or the right of any one claiming to be the representative of any deceased or other depositor, they may require satisfactory proof and indemnity before paying such deposit, or any part thereof." The defendant has about 17,000 depositors. It is not claimed by the plaintiff that she was ignorant of these rules, or that she did not assent to them. She made several small deposits. The first money drawn by her, $14.12, was about 14 months after the first deposit. She went to the bank with her niece, Mrs. Haight, presented her book, signed her name by making a mark, which was the manner she indicated her checks would be signed in the signature book at the bank when she made the deposit, and Mrs. Haight witnessed the signature. This money was paid by her to Mrs. Haight at the time. About May 5, 1903, her book was with her then attorney, Mr. Sanders, in his safe. She gave a $30 check to her physician, had Mrs. Haight witness it, and told him to go and get the book of Mr. Sanders, and take it to the bank. This was done, the money withdrawn, and the book was by him returned to Mr. Sanders. No other moneys were withdrawn from this account until June 6, 1903, and from that time to December 4, 1904, nine different checks were drawn, purporting to be signed by the plaintiff's mark, payable to the order of Mrs. Haight, witnessed by her husband, and Mrs. Haight presented the book to the bank, and drew the moneys therefrom. The entire amount drawn upon these last nine checks was $524.63. The plaintiff has recovered from the bank that sum, with interest, upon the theory that the book was presented without her knowledge, and the checks were not signed or authorized by her, and that the bank was guilty of negligence. The attorney who had the book in his office swears that the plaintiff told him to deliver the book to the doctor or the Haights, and that afterwards he told the plaintiff that he had delivered the book to them. She does not definitely deny that she told him he might so deliver the book, but has no recollection of his having told her that he had delivered it to them. Upon this point she says: "I can't remember that Mr. Sanders came up or drove up to Mr. Haight's house while I was staying there and tell me that he had given my bankbook to the Haights; I can't remember; that is all that I can say: I do not know as I would remember if he had told me he had given the book to the Haights."

Argued before SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

Miller & Golden (John D. Miller, of counsel), for appellant.
Louis M. King (John H. Gleason, of counsel), for respondent.

JOHN M. KELLOGG, J. It is recognized that the rule of liability of a savings bank and a commercial bank is different where payment of the depositor's money is made to the wrong person, for the reason that in the commercial bank the depositor ordinarily has frequent transactions, and is more or less personally acquainted with the officials of the bank, while in a savings bank the depositor is usually not a business person, the transactions are not so frequent, and there are so many depositors who visit the bank at such rare intervals that it is not to be supposed that its officials would have personal acquaintance or knowledge of all its depositors. The one account is more or less active, and for business people; the other account is more or less dormant, and for

people usually unacquainted with business. While in the case of the commercial bank the ordinary rules of commercial law apply, in the case of the savings bank the relations of the depositor with the bank with reference to a withdrawal of the fund depend almost entirely upon the rules of the bank which are brought home to the knowledge of the depositor. The savings bank has no stockholders, but is in fact an aggregation of depositors, doing business for their own benefit, and realizing such income from their deposit as the general business earns. Section 113 of the bank law (chapter 689, p. 1895, Laws 1892) provides that the sums deposited with any savings bank shall be repaid to such depositor in such manner and at such times and under such regulations as the board of trustees shall prescribe; such regulations to be printed in the passbook and conspicuously posted in the banking office, and "shall be evidence between the corporation and the depositors holding the same of the terms which the depositors therein acknowledge are made." The rules of this bank, therefore, that "a payment to a party presenting a passbook shall be deemed a good and valid payment to the owner of the deposit," is the contract between the parties, and is binding upon them. In this case it is evident that the loss of the plaintiff's money comes from the fact that she was negligent in the care of the passbook by consenting that it be delivered to the Haights, or allowing it to remain with them after her knowledge of the fact, or from the carelessness of the attorney in delivering it to the Haights without her authority. Her loss, therefore, comes upon her primarily from her carelessness, and should not be visited upon the other depositors of the bank, unless the officials of the bank are guilty of negligence. This may fairly well be said to be the rule:

"If at the time a fact or circumstance was brought to the knowledge of the defendant's officers, which was calculated to and ought to have excited the suspicion and inquiry of an ordinarily careful person, it was clearly their duty to institute such inquiry, and their failure to do so presented a question for the consideration of the jury." Gearns v. Bowery Savings Bank, 135 N. Y. 557–562, 32 N. E. 240.

The relations between the depositor and the savings bank, and the reasons why the bank is only held for negligence in payment of the money to the wrong person, is well shown in Kelley v. Buffalo Savings Bank, 180 N. Y. 177, the court saying, at page 178, 72 N. E. 995, 997, 69 L. R. A. 317, 105 Am. St. Rep. 720:

"Upon reflection it becomes obvious, therefore, that the only practicable general rule to which savings banks can fairly be held in such dealings is the ordinary rule of ordinary care, leaving it to be applied in the light of the special circumstances that characterize each separate case. This is the rule that has been laid down by this court in a variety of similar cases."

In reading the books upon this subject care must be taken that the rules of the bank do not charge upon it more than ordinary care in the payment of the money where circumstances exist which should ordinarily arouse its suspicions. In this case the rules of the bank contain no provision except the broad one that a payment upon presentation of the book is good. The question then is, did the officers of the bank fail to exercise ordinary care for the protection of the plaintiff at the time these various payments were made? Did any fact appear which would

call to the mind of the ordinary prudent man a doubt or a suspicion that the transaction was not an ordinary business transaction in the manner in which this book was presented? The bank officials who paid the various checks swear that all the customs and rules of the bank were observed when these particular payments were made, but in most cases they admit that they have no definite recollection of the particular transactions, but are swearing from the method which was always pursued in such cases. Where the book is presented by a person other than the depositor, the officials look to the signature book, to see in what manner the signature is written. That precaution was frequently observed in this case, and it was discovered that the signature was properly made by mark. If the book is presented and the receipt signed by a person other than the payee, then, unless the payee or payees' signature is known, it is required that he be sufficiently identified. In this case the first two checks bearing Mrs. Haight's name are conceded to be genuine, and the payments made upon them were entirely proper. When the third check was presented, reference was made to the signature book and to the former checks signed by Mrs. Haight. She was then asked if she saw the plaintiff sign the check, and she replied that she did. This seemed to comply with the rules and the requirements and practices of the bank. This method was adopted in most of the cases, except in some cases the clerk swore that he compared Mrs. Haight's signature upon which the bank had made payments, and found it the same, and as to some of the checks the clerk swears that he knew Mrs. Haight from her prior dealings with the bank in reference to these checks, and required no further identification. It is difficult to say upon what particular point the negligence of the bank is predicated. It is evident that the plaintiff was not prejudiced by a failure to make inquiries of Mrs. Haight as to the reason why the plaintiff did not come to the bank in person, where she was, or her relationship to the plaintiff. If the bank did not already know these facts, the answer is apparent that it would have been stated that she was the aunt of Mrs. Haight, living in her family, was sick at her house with an ulcerated leg, and was being supported and cared for by Mrs. Haight and her husband as a part of their family. These were the facts, and, if the bank did not know them, its inquiry would have undoubtedly elicited such answers. The failure to obtain such answers could not prejudice the plaintiff.

But it is suggested that the fact that this account was practically dormant, that but two checks had been drawn upon it for 28 months, and then within the period following 9 checks, aggregating about $500, were drawn in 6 months, was enough to put the bank upon its inquiry. But all classes of persons make deposits in savings banks, and the particular reason for which each person is saving up such moneys is not known to the bank, and the fact that after a period of time the money is drawn in a lump, or in different checks, does not seem to be so unusual or improbable a transaction as to charge the officers with negligence in making such payments. What could it have done in this case otherwise than it did do? It is evident that when these checks were presented with the book, by the niece of the depositor, whom the depositor

had first brought in relations with the bank, and in whose house she was then living, and who had been the witness on previous checks which were concededly genuine, that it would have apparently been a violation of the duty of the bank, without any further information or suspicion than it had, to refuse to pay such checks. The bank cannot act unreasonably or capriciously in refusing to pay a customer's check upon presentation of the book, and for an unreasonable refusal would be clearly liable to any damages which might result. The defendant's rules provide that it may require proof or indemnity in case of doubt, and honest doubt can only justify refusal to pay when the book is presented. In considering the right of the bank to make these payments, we must also consider the duty of the bank to make a payment when the book is presented in the ordinary course of business, without suspicious circumstances. The first check here alleged to be irregular was for a small amount, and was well in line with the previous withdrawals by the plaintiff. The same may be said about the other small checks preceding the large check of $275. And perhaps until that time it would not seriously be claimed that the bank was called upon to exercise any geater care than it had been exercising. That check was fourth in number of the nine checks, the ones preceding being for $40, $16, and $10, respectively. But is it such an unusual circumstance that a customer who has drawn several small checks upon her account should draw a check for $275, and have it presented to the bank by her niece with the bankbook? If the bank were to raise up such suspicions and act upon them, it is probable that many people would be deprived of the benefits of their moneys in the bank which they desired for immediate use.

Upon a careful consideration of the evidence and all the attending circumstances, I cannot see that this bank has failed to exercise ordinary care for the protection of the plaintiff, and I do not see any fact, as the situation then appeared to it, which would have justified it in refusing to make the payments. A refusal would have rested upon a mere guess, and not upon a doubt, or upon the presence or absence of any fact which should have aroused a suspicion.

In addition to these suggestions, which show that the bank was not negligent, the jury have found that the Haights were not authorized in drawing all these moneys, and in respect to some of the larger payments the finding may be justified; but it is still quite evident that some of the former and smaller payments seem fairly to have been authorized by the plaintiff, and the book intrusted to them. Mrs. Haight swears that the first of the nine checks was used in part to pay Dr. Wilson the balance of his bill after the plaintiff had discharged him. She admits his discharge, and that she did not pay him, and the doctor swears he was paid his money. The plaintiff swears the first payment of $14.12 drawn by her from the bank, and when she was not living with Mrs. Haight, was drawn for the purpose of getting Mrs. Haight some money on account of her serious needs. If that fairly represented her financial condition, it would not seem probable that she could have taken the plaintiff in her family and taken care of her for months without any compensation. While she and Mrs. Haight do not agree as to the extent

of her helplessness, Mrs. Sanders informed the plaintiff just before she went to the Haights that she must leave her home, as she did not have the time to attend to her. This fact is sworn to by the plaintiff herself. The plaintiff is old and forgetful, and I think the evidence fairly tends to show that some of these small checks, at least, were made or authorized by her, and that she was wronged by the Haights with reference to some of the checks which were not authorized by her. Upon the whole case, I am satisfied there was no evidence before the jury tending to show that the defendant paid this money otherwise than in the ordinary prudent conduct of its business, and that it exercised at least ordinary care for the preservation of the plaintiff's money. The defendant's motion for a nonsuit should therefore have been granted.

The judgment and order are therefore reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.