### SIEGEL v. STATE BANK.

(Supreme Court, Appellate Term.   May 24, 1910.)

1. BANKS AND BANKING (§ 300*)—SAVINGS BANKS—REPAYMENT OF DEPOSIT— LIMITATION OF LIABILITY.

   A depositor in a so-called "inactive department" of a bank, not sufficiently familiar with English to understand what was printed on the fly leaf of his pass book, cannot be charged with knowledge of a limitation of the bank's liability, when it was not called to his attention by the bank officials, and there was nothing in the circumstances to indicate to him the necessity for knowing what this printed matter meant; and hence it is solely responsible for payments made on his forged signature, notwithstanding the limitation.

   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1159–1161; Dec. Dig. § 300.*]

2. BANKS AND BANKING (§ 289*)—SAVINGS BANK—LEGAL PRINCIPLES GOVERNING.

   In absence of rules assented to by its customers, a savings bank is to be governed by the same legal principles which apply to other moneyed institutions.

   [Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 289.*]

3. BANKS AND BANKING (§ 301*)—DEPOSITS—CARE IN PAYING OUT MONEY.

   Officers are not relieved from using reasonable care in paying out a depositor's money, though provisions in his pass book approximate it to the case of an ordinary savings bank.

   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 1164; Dec. Dig. § 301.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Municipal Court, Borough of Manhattan, Second District.

Action by Barnet Siegel against the State Bank. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before SEABURY, GUY, and BIJUR, JJ.

Feltenstein & Rosenstein (Abraham Rosenstein, of counsel), for appellant.

Henry M. Fertig (Albert J. Rifkind, of counsel), for respondent.

BIJUR, J. Plaintiff had money on deposit with defendant bank. The latter maintained a so-called "inactive department." It had issued to plaintiff a pass book similar to those of a savings bank. On the fly leaf there was printed a provision usual in the case of savings bank pass books:

"This bank will endeavor to prevent frauds on its depositors, yet all payments to persons producing the pass books issued by the bank shall be valid payments to discharge the bank."

Other pages contained the bank's name, and that of its officials, and similar announcements, respectively. A relative of plaintiff, having secretly procured possession of the pass book, forged his name, exhibited the book, successfully answered the test questions alleged to be usually asked by the bank officials, and procured money on two separate occasions.

As plaintiff testified that he was not sufficiently familiar with the English language to understand what was printed on the pass book, and as these provisions were not called to his attention by the bank officials, and there was nothing in the circumstances to indicate to him any necessity for knowing what this printed matter meant, he can scarcely, under familiar rules, be charged with knowledge of the limitation therein contained. See 9 Cyc. 261, 262, notes. It would seem, therefore, that the bank was solely responsible for payments made on his forged signature.

"In the absence of any rules, assented to by its customers, a savings bank is to be governed by the same legal principles which apply to other moneyed institutions." Allen v. Williamsburgh Savings Bank, 69 N. Y. 314, 321.

Whether, however, the case be regarded as governed by the provisions in the pass book, approximating it to the case of an ordinary savings bank, or not, the officers of the bank were not relieved from using reasonable care and prudence in paying out the depositor's money. Kummell v. Germania Savings Bank, 127 N. Y. 488, 491, 28 N. E. 398, 13 L. R. A. 786, where the principle is clearly enunciated, expressly limiting the contrary intimation contained in previous cases, particularly Schoenwald v. Metropolitan Savings Bank, 57 N. Y. 418.

While the claim was made by the bank that the plaintiff had been careless in guarding the pass book, the testimony did not support that contention. On the other hand, the bank officials were unable to testify positively that they had asked the fraudulent drawer of the money the usual test questions, and there was other evidence which indicated a lack of care on the part of the bank.

Under these circumstances, judgment for the plaintiff was fully warranted. Critten v. Chemical National Bank, 171 N. Y. 219, 232, 63 N. E. 969, 57 L. R. A. 529.

Judgment affirmed, with costs. All concur.