(93 Misc. Rep. 52)

### KRISHKAN v. NEW YORK SAVINGS BANK.

(Supreme Court, Appellate Term, First Department. December 20, 1915.)

1. BANKS AND BANKING ☞301—SAVINGS BANK—CARE.
    A savings bank, unlike a discount bank, is bound to exercise only ordinary care in paying out its depositors' funds, and, if such care be exercised, a depositor cannot recover because his funds were paid out to a stranger.
    [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1159, 1162–1164, 1166–1168, 1172–1176; Dec. Dig. ☞301.]

2. BANKS AND BANKING ☞306—SAVINGS BANK—ACTION.
    In an action against a savings bank for funds which the bank had paid to a stranger, who had possession of the depositor's passbook, evidence *held* insufficient to show the bank was negligent.
    [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1165, 1169, 1183–1188; Dec. Dig. ☞306.]

Appeal from City Court of New York, Trial Term.

Action by Jehkab Krishkan against the New York Savings Bank. From a judgment for plaintiff, defendant appeals. Reversed, and complaint dismissed.

Argued December term, 1915, before GUY, PAGE, and PHILBIN, JJ.

John A. Dutton, of New York City, for appellant.
Henry Leon Slobodin, of New York City, for respondent.

GUY, J. The action is to recover from the defendant savings bank $900 paid by the bank out of a deposit of $1,000 to a person

claimed to be other than the depositor. In March, 1912, one Jehkab Krishkan (plaintiff's name) deposited $1,000 in the bank and received a passbook containing the entry of said deposit. At the time the account was opened the depositor signed what appears to be said name in defendant's signature book and on a signature card, and he also wrote the address "60 Charlton Str." on the card, and an attendant of the bank wrote on the same card answers given to questions printed thereon as to the depositor's occupation, where and when born, and the names of his parents, brothers, and sisters. The occupation was stated to be longshoreman, and the nationality Russian.

On October 15, 1912, a person representing himself to be the depositor called at the bank, presented said passbook to Mr. Humphries, one of its tellers, and requested payment of $900. The teller filled in upon one of the usual blank receipts of the bank the number of the passbook and the amount to be drawn, and handed the receipt to the person presenting the book, who thereupon signed the plaintiff's name, with the address, "47 King Str." The teller asked the drawer to sign his name again, which he did several times, both on the face and on the back of the receipt. As the address given was different from that on the bank record, the teller asked the drawer to sign his old address, whereupon he wrote "60 Charlton Str.," the same address given by the depositor when the account was opened, and from which place plaintiff testified he had moved to King street. The teller compared all the signatures with those on the signature book and the signature card, and he asked the drawer the questions put to the depositor at the time of the opening of the account. The teller wrote the answers on the back of the receipt, and they corresponded exactly with the bank record, with the exception that the drawer said he was born in 1885, whereas the record was 1884. Humphries then conferred with his associate teller, Blakelock, with whom the account was originally opened, and the latter compared the various signatures on the receipt with that on the signature card, and then took a new signature card, upon which the drawer again wrote his name and address. Blakelock then questioned him and wrote the replies on the new card, and the answers tallied exactly with those given by the depositor when the account was opened. After this investigation the tellers were satisfied that the party desiring to draw the money was the depositor, and Blakelock entered the amount of the withdrawal, $900, in the passbook, and the book and the $900 were handed over to the drawer.

On or about January 10, 1913, plaintiff, with his brother, went to the bank, presented the passbook, and demanded payment of the full amount of the deposit, with interest, which was refused. At that time the entry of $900 which had been made in the passbook on the withdrawal of that sum had been erased. On January 17th following, plaintiff signed an order on the defendant to pay to his attorney, Victor E. Gartz, the balance of the account, $100. The bank refused to honor this draft, for the reason that the signature on the order was not the signature of the depositor, but finally, upon Gartz guaranteeing the signature, paid over the balance by check to his order.

During the time in question the bank had more than 46,000 depositors of all nationalities, and only a small percentage of them were known to its officers and employés, the daily drafts averaged about 160, and the genuineness of all the signatures had to be passed upon within a period of six hours. Defendant's by-laws provided that the defendant would endeavor to prevent frauds on its depositors, but also provided that all payments to persons producing the passbooks should be deemed good and valid payments to the depositors.

[1] The degree of care required by savings banks differs from that required of discount banks. The defendant was bound to exercise only ordinary care in paying out its depositors' funds, and if in the exercise of such care it paid the $900 to the wrong person in this case, it is not liable. Appleby v. Erie County Savings Bk., 62 N. Y. 12; Mahon v. South Brooklyn Sav. Institute, 175 N. Y. 69, 67 N. E. 118, 96 Am. St. Rep. 603; Kelley v. Buffalo Savings Bank, 180 N. Y. 171, 72 N. E. 995, 69 L. R. A. 317, 105 Am. St. Rep. 720. In Kelley v. Buffalo Savings Bank, supra, the court said (180 N. Y. 177, 72 N. E. 997, 69 L. R. A. 317, 105 Am. St. Rep. 720):

"If it were the duty of savings banks to establish at all hazards the identity of every person presenting a depositor's bank book and draft, it would be quite as impossible for them to continue business as it would be for some persons to avail themselves of the best known and most generally approved method of investing and accumulating the fruits of frugal and patient economy."

And (180 N. Y. 178, 72 N. E. 997, 69 L. R. A. 317, 105 Am. St. Rep. 720):

"It would be utterly impracticable to do business if each application for a withdrawal of money had to be delayed until a searching inquiry could be made as to the regularity of the transaction."

[2] Did the defendant's employés exercise ordinary care in making the $900 payment in October, 1912? There are differences between some of the drawer's signatures and the signatures of the depositor, and these are relied upon by the respondent as justifying the submission of the case to the jury. The plaintiff claims to have signed his name in the signature book and also on the signature card at the time of the opening of the account in March, 1912, but there is as much difference between these two signatures as there is between some of the signatures written by the drawer for the paying tellers in October, 1912, and the signatures of the depositor; and there is a greater difference between the signatures of the depositor and the signature of the plaintiff to the order for the closing of the account than there is between any of the signatures written by the drawer for the tellers in October, 1912, and the signature in the signature book. Indeed, there is such a marked difference between the signature of the plaintiff on the $100 closing order and the signature of the depositor that the bank was justified in refusing to honor the order unless the payee guaranteed the signature. The address, "60 Charlton Str.," written by the drawer, seems identical with that made by the depositor on the signature card, and the plaintiff admitted that that address, as written by the drawer, was written by plaintiff him-

self. Respondent lays stress on the fact that the surname was spelled by the drawer in one instance with "sch" instead of "sh," and again "ch" instead of "sh." But the defendant's testimony showed, and indeed we might well take judicial notice of the fact, that ignorant foreigners frequently change the spelling of their names and that their handwriting changes from time to time; and the very fact of the difference in spelling in one or two instances would seem to negative the contention that the depositor's signature was forged.

Several of defendant's witnesses, experts on the subject, testified in detail as to the reasons which convinced them that the signatures of the drawer were and are the same as those of the depositor. The plaintiff denied that he signed the receipt for $900, but furnished no other evidence on that subject. A consideration of the various steps taken by defendant's employés to prevent a fraudulent withdrawal, and an examination of all the signatures, convince us that defendant exercised ordinary care in making the payment complained of to the holder of the passbook, and that defendant's motion for the direction of a verdict in its favor should have been granted.

The judgment should be reversed, with costs, and complaint dismissed, with costs. All concur.