MARY DAIVISH v. FARMERS & MECHANICS SAVINGS BANK OF MINNEAPOLIS.[1]

April 19, 1929.

No. 27,145.

[1]Reported in 225 N. W. 100.

*Hyman Juster* and *Schwartz & Halpern,* for appellant.

*G. G. Cowie, Kingman, Cross, Morley & Cant* and *Edwin D. Ford, Jr.* for respondent.

WILSON, C. J.

Plaintiff appealed from an order granting defendant judgment non obstante.

Plaintiff was born in Roumania in 1860. In 1922 she had $954 in her account with defendant which she opened in 1913 when she came to America. She was uneducated and ·signed by her mark. She lived near Hackensack, Minnesota, in the home of her stepdaughter, whose husband was Constantine Gilia. In December, 1922, Gilia was required to give a bond. Plaintiff drew $500 from her said account to use in indemnifying one of Gilia's sureties, E. N. Barthelemy, the cashier of the Hackensack State Bank. This withdrawal was made by draft signed by plaintiff's mark and payable to the Hackensack State Bank.

About May 14, 1923, defendant received through the mail from the Hackensack State Bank an order payable to the latter bank for $454.52 purporting to be signed by plaintiff by her mark which was witnessed by Jennie Mellon and C. E. Barthelemy. Plaintiff's pass book accompanied it. The order was paid under the circumstances hereinafter stated. Plaintiff now claims that she never signed the order, that it was a forgery, and she seeks to recover from defendant the amount. The evidence in the case made the issue of forgery a jury question, and its verdict for plaintiff in that respect may stand though its correctness is subject to serious doubt.

■ As a matter of public policy, the rule is that a savings bank in relation to funds on deposit is liable to its depositors for want of ordinary care only. Fiero v. Franklin Sav. Bank, 124 Misc. 38, 207 N. Y. S. 235; Bulakowski v. Philadelphia Sav. Fund Soc. 270 Pa. 538, 113 A. 553; Commonwealth Bank v. Goodman, 128 Md. 452, 97 A. 1005; Krishkan v. N. Y. Sav. Bank, 93 Misc. 52, 156 N. Y. S. 298; 7 C. J. 871, § 919, cases cited note 20; Kelley v. Buffalo Sav. Bank, 180 N. Y. 171, 72 N. E. 995, 69 L. R. A. 317, and note, 105 A. S. R. 720. It would be impracticable and unwise to impose any higher degree of care on a savings bank. Kelley v. Buffalo Sav. Bank, 180 N. Y. 171, 72 N. E. 995, 69 L. R. A. 317, 105 A. S. R. 720; 7 C. J. 871, § 919.

■ There is some confusion in the authorities as to where the burden of proof lies in a case of this character. But this action is one to recover money. It rests upon contract. If plaintiff relied upon defendant's negligence she would have to prove it. She does not. The question of negligence comes into the case because of defendant's claim of payment to a third party under such circumstances of care and diligence as to relieve it of liability. In establishing such a defense the burden of proof is upon the defendant to show that it exercised reasonable care and diligence under the circumstances. Noah v. Bowery Sav. Bank, 225 N. Y. 284, 122 N. E. 235.

■ When the evidence as to the alleged negligence is undisputed and is conclusive, that is, not permitting different inferences, the question presented is one of law; otherwise it is one of fact.

■ A consideration of this question in the instant case requires an additional statement of the facts and circumstances. The bank's previous payment of the $500 was satisfactory. The second order came through the same channel and was in substantially the same form. The pass book accompanied each order. This book has printed in it:

"If this book is lost give immediate notice to the bank; personally, if possible; otherwise by letter."

Under the head of Rules and Regulations in the pass book it is stated that withdrawals are not allowed unless the pass book is produced. Paragraph V of the rules states:

"The depositor is responsible for the safe keeping of his pass book and the withdrawal of his money by the proper party and must use every endeavor to prevent the production of his pass book to the bank by a person not authorized to do so. While the bank reserves the right to require a written receipt or order from the depositor, nevertheless, unless notice of the loss, destruction or detention from the depositor of his pass book or the death of the depositor shall have been previously given to the bank, a payment made by the bank to a person producing the book, whether with or without the depositor's authority or receipt or order, shall be deemed a valid payment to the depositor."

This rule is binding upon plaintiff though it does not relieve the bank from ordinary care, but as bearing upon its care it is important that no notice had been given that the book had left the control of the owner. Her apparent control was magnified by past experience.

When plaintiff opened her account with the bank in 1913, she, like all depositors therein, was required to fill out a questionnaire wherein she gave her birthday as "Aug. 1860." Upon receiving the order for $454.52 on May 15, 1923, the bank did not honor it. It was signed by mark. It was returned with a test card or questionnaire calling for substantially the same information disclosed by the original questionnaire. This was filled out and returned with

the order to defendant. On this questionnaire after the word "birthday" were written the words "not known." This little discrepancy from the answer made ten years before caused the defendant again to return the order to the Hackensack bank for the reason:

"When money was deposited this party gave the month and year of her birth. Answers on slip not satisfactory. If you know this party and will guarantee her signature by X mark we will pay it."

Under date of May 21, 1923, the Hackensack bank wrote defendant:

"As Mary Daivish, whose signature by X mark appears on our customers' draft on yourselves in the amount of $454.52 is personally known to the officers of this bank who witnessed her mark, we feel at liberty to, and do guarantee her signature.

"Trusting there will be no further delay in this matter, as Mrs. Daivish wishes to use this money at once," etc.

Thereupon defendant sent the money. May it now be said that it was negligent? If so, because of what? Appellant's counsel says it was negligent because it did not refuse to pay the money. That is to judge the transaction by subsequent events. What more could or would an ordinary, prudent man in the operation of a savings bank have done under similar circumstances?

The depositor was an uneducated person, a long distance away. Obviously she held a humble station in life. The bank enjoying her patronage was undoubtedly anxious to serve her without putting her to any unnecessary expense. Would it have been reasonable for it to have required this woman to come from Hackensack to Minneapolis to draw her money? We think not. That would have been a harsh and unreasonable requirement. As the bank saw the situation, plaintiff had put her pass book in the hands of the Hackensack bank which had previously properly had it for a withdrawal. A savings bank cannot act capriciously. It owes a duty to the depositor to pay when a proper demand is made. What was there to create an honest doubt as to the propriety of complying with

the demand made? An unreasonable refusal would subject it to liability for damages which might result. There was nothing to cast suspicion upon the order. Yet the defendant, perhaps exercising a high degree of care, recognizing the slight difference in the statements relative to her birthday, took the cautionary measures indicated.

At the time of this transaction the Hackensack State Bank was a going concern. The guaranty was not solely for the benefit of defendant. It was not to indemnify for loss, but it was directed to plaintiff's identity and the genuineness of her signature. This requirement is indicative of very great care, and the conduct of the Hackensack bank in giving the guaranty is very persuasive and convincing proof that the order was genuine and worthy of being honored. Banks necessarily know what it means to guarantee the identity of a drawer and the genuineness of a signature. Yet the Hackensack bank was willing to and did do this without hesitation. How could defendant, in the face of such manifestation of faith and confidence by the bank which knew the facts, longer refuse to honor the order? Upon what ground could it have justified such refusal? It does not insure the funds on deposit and is not expected to exercise the highest degree of care. The degree of care required of it differs from that required of commercial or discount banks. It seems to us that defendant's conduct commends it as a careful, safe and conservative financial institution; and that there is not sufficient evidence in the case to support a finding that it failed to exercise ordinary care. Moler v. State Bank of Bigelow, 176 Minn. 449, 223 N. W. 780; Campbell v. Schenectady Sav. Bank, 114 App. Div. 337, 99 N. Y. S. 927; Commonwealth Bank v. Goodman, 128 Md. 452, 97 A. 1005; Sullivan v. Lewiston Inst. of Sav. 56 Me. 507, 96 Am. D. 500.

Affirmed.