[Civ. No. 6970. First Appellate District, Division Two.—July 28, 1930.]

B. H. PADDOCK, Administrator, etc., Respondent, v. ANGLO–CALIFORNIA TRUST COMPANY (a Corporation), Appellant.

Young & Hudson and Young, Hudson & Rabinowitz for Appellant.

J. W. Henderson for Respondent.

NOURSE, P. J.—Plaintiff sued as the administrator of the estate of May Howe to recover money deposited with defendant by deceased. Plaintiff had judgment for

$3,949.27, and the defendant appeals on a bill of exceptions.

The complaint contained the allegation that at the time of her death on June 22, 1923, May Howe was a depositor with the defendant, having a balance of $3,340.52 in the savings account, $559.47 in the Liberty bond account and one fifty-dollar 4½ Liberty bond. The appointment and qualification of her administrator were then set forth, followed by the allegation that the administrator had not withdrawn any portion of said accounts or the Liberty bond, and that demand was made upon the bank for payment, which was refused. The answer was a simple denial that the deceased had on deposit at the time stated any balance in either of said accounts or any Liberty bond.

The cause was tried wholly upon a written agreed statement of facts, and the trial court found in accordance with such statement. The cause was tried and is presented on this appeal without any distinction being made among the three separate accounts, the entire sum sued for being treated as a savings bank deposit as that term is commonly used. We will treat the case in the same manner, confining our discussion to the liability of a savings bank for the payment out of a savings account, after the death of the depositor, to the holder of a genuine order, accompanied by pass-book, but without notice of the death of the depositor.

In the stipulation of facts the order of the depositor was included, reading: "Los Altos, Cal. June 21st, 1923. Anglo California Trust Co., Sirs: Enclosed please find pass books. I wish to close my account and if possible to sell my Liberty Bond. Kindly pay the balance of my account to John F. Fonner. It is necessary to close the account at once as I am very ill and must have the money. Sincerely yours, (Signed) Mrs. May Howe. (Mrs. A. W. Bagot)" a witness.

It was also stipulated: "That the said John F. Fonner did not at said time or at all tell the said defendant of the fact that the said May Howe was dead, nor did the defendant make any inquiries in that regard; that said Fonner was personally known to the defendant and that defendant paid said above sums in good faith and in the regular course of business, as is the custom of this bank as to payment of ordinary checks and orders, and had no notice of

the fact that May Howe was dead at or before the time of such payment by it unless the order above set forth constituted notice as a matter of law or unless any facts stipulated herein shall constitute such notice as a matter of law.''

In view of this stipulation, which the trial court found to be true, the question resolves itself into one of what degree of care is required of a savings bank under such circumstances, and in this connection the distinction between a commercial and a savings bank must be borne in mind. On this point we said in *Evans* v. *Bank of Italy*, 96 Cal. App. 259, 262 [274 Pac. 74]: ''The duties and liabilities of a commercial bank and a savings bank are not necessarily the same, and in some respects are different. (*Kelley* v. *Buffalo Sav. Bank*, 180 N. Y. 171 [105 Am. St. Rep. 720, 69 L. R. A. 317, 72 N. E. 995].) A savings bank is bound to exercise ordinary care and diligence only. (7 C. J. 871; *Krishkan* v. *New York Sav. Bank*, 93 Misc. Rep. 52 [156 N. Y. Supp. 298]; *Langdale* v. *Citizens Bank of Savannah*, 121 Ga. 105 [104 Am. St. Rep. 94, 2 Ann. Cas. 257, 69 L. R. A. 341, 344, 48 S. E. 708].)''

The leading case on the subject, and the one which has been followed in the few authorities found, is *Kelley* v. *Buffalo Sav. Bank*, 180 N. Y. 171 [105 Am. St. Rep. 720, 72 N. E. 995] (see annotation in 69 L. R. A. 317, at p. 338), where the rule was laid down that the very necessities of the business relation between such banks and their depositors required that the banks should be held to the rule of ordinary care and diligence only.

Applying this rule to the case at hand we are faced with the finding of the trial court that in this instance the bank paid in good faith and in the regular course of business and without knowledge of the death of the depositor. It is true that the trial court did not find in words that the bank acted with ordinary care and diligence, but when we add to the finding made the legal presumptions that a person takes ordinary care of his own concerns and that the ordinary course of business has been followed (sec. 1963, Code Civ. Proc.), the case is complete. But, aside from this, we have the positive finding that the bank paid without notice of the death of the depositor and we have been

unable to find any authority holding that the bank is responsible to the estate under such circumstances.

It is argued that the bank had constructive notice through the form of the order and other facts stipulated to. But the trial court did not so find. It found that there was no notice at all unless this order and these facts constituted notice as a matter of law. But the question whether certain facts are sufficient to constitute constructive notice is one to be determined in the light of all the circumstances of each case.

Aside from the order of the depositor the only additional fact in the stipulation which is urged as sufficient to put the bank on notice is that the order was presented for payment six days after its date, but the force of this circumstance is lost by the fact that the order was executed outside of San Francisco and that a Saturday and Sunday intervened. As to the order itself it is argued that the bank was put upon notice by the statement of the depositor that: ''It is necessary to close the account at once as I am very ill and must have the money.'' We can read nothing in this language but a request on the part of the depositor to hasten the payment without requiring the usual notice in advance of the payment of an account of this size. Certainly the bank cannot be required in every case to refuse payment until it has been satisfied as to the state of health of the depositor. If this were so, death might result during the delay and as a direct result of the bank's refusal to furnish the funds necessary in the emergency.

But viewing these circumstances with the presumptions noted and the express finding that the bank acted with due care and in the regular course of business, we are forced to the conclusion that the facts relied on are insufficient to constitute constructive notice as a matter of law because, if payment under such circumstances is with due care and in the ordinary course of business, then the rule of ''ordinary care'' announced in the cases cited would become wholly meaningless.

Judgment reversed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 27, 1930, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 25, 1930.