ALESSANDRO BELLANTESE, as President of SOCIETA DI NAPOLI MUTUO SOCCORSO, an Unincorporated Association Consisting of More Than Seven Persons, Plaintiff, *v.* BRONX SAVINGS BANK, Defendant.

City Court of New York, Bronx County, July 16, 1934.

*Rosario Ingargiola,* for the plaintiff.

*William C. Dwyer,* for the defendant.

DONNELLY, J.   In this action plaintiff seeks to recover from the defendant savings bank the sum of $1,867.09, moneys deposited with it by plaintiff, and which, it is claimed, the bank negligently paid upon forged withdrawal orders.

On May 2, 1931, plaintiff society opened an account with the defendant by the initial deposit therein of $1,800. By a resolution of the society on that date this money was to be withdrawn pursuant to orders signed by Narciso Maiolo, president; Antonio Castagnozzi, treasurer, and Guiseppe Abetecola, secretary. By a resolution of the society dated February 23, 1932, the three names were changed in one respect, namely, that one Umberto Poli was substituted as treasurer in the place and stead of Antonio Castagnozzi. By a subsequent resolution dated April 20, 1932, the three names were again changed in one respect, namely, Angelo Moretto or Moretti was substituted as secretary in the place and stead of Guiseppe Abetecola. This resolution of April 20, 1932, is a forgery. The name " Angelo Moretto " or " Moretti " is fictitious. No person of either name ever belonged to or now is a member of plaintiff society. (*Brown* v. *People*, 8 Hun, 562, 563; *People* v. *Jones*, 106 N. Y. 523; *People* v. *Browne*, 118 App. Div. 793, 799.) The forgery was committed by Poli, " to make easier," as stated by plaintiff's counsel in his brief, " his [Poli's] forgeries and peculations of the society's money." There is ample justification for that statement.

The first withdrawal order presented to the defendant is dated February 23, 1932. It calls for the payment of $350. A comparison of the forged signature thereon of Guiseppe Abetecola with the genuine signature of Abetecola on the resolution of May 2, 1931, does not show any dissimilarities to excite suspicion. Following the resolution of April 20, 1932, in which the name " Angelo Moretto " or " Moretti " appears, there were presented to the bank eleven withdrawal orders, beginning April 22, 1932, and continuing to and including April 18, 1933. On the signature card at the defendant bank there is in the final letter of the name " Moretto " or " Moretti " a flourish which gives that letter the appearance of an " o." There is in the resolution a similar flourish in the same letter, giving it likewise the appearance of an " o." On all of these eleven withdrawal orders, with the exception of the one dated April 22, 1932, the name is written " Moretti." On the withdrawal order dated April 22, 1932, it is written " Moretto."

In *Noah* v. *Bank for Savings* (171 App. Div. 191, 193) it was held: " The rule as to the liability of savings banks for payments made upon forged drafts is well settled. It is quite different from that which applies to ordinary banks of deposit which act at their peril and are absolutely liable for payments made upon forged checks, no matter how skillful the forgery may be. In the case of savings banks, however, the rule is that the bank will not be liable for having paid upon a forged draft unless negligence can

be imputed to it, that is to say, unless the discrepancy between the signatures is so marked and plain that an ordinarily competent clerk, exercising reasonable care, should detect the forgery. (*Campbell* v. *Schenectady Savings Bank*, 114 App. Div. 337; *Kelley* v. *Buffalo Savings Bank*, 180 N. Y. 171; *Appleby* v. *Erie County Savings Bank*, 62 id. 12.)"

In the instant case the defendant had two head tellers and other tellers who worked under them. When the pass book and withdrawal slip were presented at the window of either head teller, he examined the signature on the withdrawal slip and compared it with the signature on the identification card and on the resolution in the bank's possession. The same procedure was followed in the case of each withdrawal slip presented at the window of each of the other tellers, after which the slips were passed on to each of the head tellers who made the same examination and comparison. In the case of each withdrawal the pass book was presented with the withdrawal slip.

It may be conceded that there is a difference between the names " Moretto " and " Moretti." Whether or not there is such a marked discrepancy in the manner in which the names were written upon the resolution and the identification card and the withdrawal slips resolves itself into a question of fact properly left to a jury to decide. (*Fricke* v. *German Savings Bank*, 4 N. Y. Supp. 627.) It would not be evidence of negligence if the difference was not marked and apparent, or if it would require a critical examination to detect it, and especially if the discrepancy was one as to which competent persons might honestly differ in opinion. (*Appleby* v. *Erie County Savings Bank*, *ante*, at p. 18.)

In the instant case the trial was before me without a jury. A comparison of the signature " Moretto " or " Moretti " on the resolution, with the signature on the identification card, shows no marked dissimilarity. The same is true of the signatures on the identification card and on the withdrawal slip dated April 22, 1932. On all of the other eleven withdrawal slips the name is written " Moretti," but the final letter in the name as it appears on the identification card is written as though the writer intended to make an " i," but, by making a flourish, the letter has the appearance of an " o." At bar the tellers were dealing with a class of depositors who have never adopted a standard signature, and whose signatures may on different occasions differ considerably. In these circumstances it is easy to understand why the defendant's tellers, without any imputation of negligence, could detect no significant discrepancy in the signatures.

Plaintiff society was organized for the purpose of giving aid to its members, paid out of its funds. Poli became its treasurer in January, 1932. He had charge of the society's benefit moneys paid to the society's members, and of their disbursement. Death benefits were paid out of the society's collections from its members. If these collections were not sufficient for the payment of benefits, the money was drawn out of the society's account in the defendant bank. At the time of the society's organization in 1922 it had a membership of between one hundred and fifty and two hundred; it now has a membership of fifty. Poli was the only one who drew money out of the society's account in the defendant bank.

Narciso Maiolo has been a member of the society for twelve or thirteen years. He was its president in 1931 and 1932. During his incumbency as president the society's financial secretary made reports to it each month purporting to show how much there was in its account with the defendant. After February 23, 1932, when Poli became treasurer, the practice of making such reports appears to have been discontinued, and a general audit, so called, was made only once a year. In these " general audits " information was given to the society purporting to show how much was in its account with the defendant bank. Up to the end of 1932 there had been withdrawn by Poli from the account approximately $1,400. To the question asked of Maiolo, " Now, when the financial report was made to the society, were you ever told how much money was in the bank account you had in the various banks for the society? " he answered: " We were always told there is $1,800, plus interest." At the end of 1932 the audit was made by the financial secretary, Abetecola. When he made this audit, neither he nor any other officer of the society went to the defendant bank to see how much of the society's money was there. Abetecola got the information as to how much money was in the bank from Poli. Maiolo never made any check-up to ascertain how much was in the bank, nor did he endeavor to have Abetecola do so. And, Maiolo testified, when a change was made in the name of the officer who was to withdraw money from the bank, it was not necessary, in order to authorize the change, to have a vote of the society.

The last withdrawal order is dated April 18, 1933. Somewhat less than two months thereafter, as the result of a talk between Poli and the society's president, Bellantese, Poli was arrested and indicted for the larceny of the society's funds. He pleaded guilty to the indictment. That his thefts grew out of his forgeries is quite evident.

Enough has been shown, it seems to me, to establish a degree of negligence upon the part of the society's officers that is almost

culpable. Dealing as they were with the funds of their members, they should have been diligent in seeing to it that those funds were honestly disbursed. There is abundant evidence that the collections were frequently insufficient to pay the benefits and that it was left to Poli to make up the difference personally, after which he was allowed to reimburse himself by withdrawals from the society's account in the bank. The method in dealing with the monthly financial reports and with the so-called general audits seems to have been too loose and complaisant to be consistent with ordinary prudence. These audits, which was the name given to them by Abetecola, were simply papers handed to him by Poli without any attempt upon the part of Abetecola or any of the other officers of the society to check them. An examination of the society's pass book would have immediately disclosed the exact amount it had in the bank. No such examination appears to have been made. The society's officers were apparently content to take Poli's word for it that at all times there was $1,800 in the account. It is impossible to understand how the officers could have believed this. The account with the defendant was opened with a deposit of $1,800. Occasionally it was necessary to draw upon it to make up the difference between collections from the members and the total required to pay benefits.

In *Campbell* v. *Schenectady Savings Bank* (114 App. Div. 337, 340) the court said: " In this case it is evident that the loss of the plaintiff's money comes from the fact that she was negligent in the care of the pass book by consenting that it be delivered to the Haights, or allowing it to remain with them after her knowledge of the fact, or from the carelessness of the attorney in delivering it to the Haights without her authority. Her loss, therefore, comes upon her primarily from her carelessness, and should not be visited upon the other depositors unless the officials of the bank are guilty of negligence. This may fairly well be said to be the rule: ' If at the time a fact or circumstance was brought to the knowledge of the defendant's officers, which was calculated to and ought to have excited the suspicion and inquiry of an ordinarily careful person, it was clearly their duty to institute such inquiry, and their failure to do so presented a question for the consideration of the jury.' (*Gearns* v. *Bowery Savings Bank*, 135 N. Y. 557, 562.)"

At bar, there were no facts or circumstances connected with any of the payments made by defendant which were of a character to put the defendant upon inquiry as to the *bona fides* of such payments.

Judgment for defendant. Exception to plaintiff. Ten days' stay and thirty days to make a case.