[Civ. No. 10435.   First Appellate District, Division One.—September 30, 1938.]

MARIE L. OGBORN, Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Respondent.

Pierce & Sherwin for Appellant.

McKee, Tasheira & Wahrhaftig, Louis Ferrari and G. D. Schilling for Respondent.

THE COURT.—This is an action to recover savings bank deposits. After trial before the court without a jury judgment was given for plaintiff for the sum of $717.05. Defendant moved for a new trial, and as a result of the proceedings had pursuant thereto the court altered its findings, reduced the amount of the recovery to $32.05, and amended its judgment accordingly, from which amended judgment plaintiff has taken this appeal.

There is no dispute as to the facts. Stated briefly, they are these: Plaintiff maintained two savings accounts with the defendant bank, one at its Richmond branch and the other at its Fresno branch. The total amount of the deposits in both accounts was $717.05; and all but $32.05 thereof was paid out by the bank to one M. M. O'Malley on three forged and unauthorized written withdrawal orders, each of which bore the genuine signature of plaintiff. This happened in the following manner: Some time prior to said withdrawals O'Malley stole plaintiff's passbooks evidencing said accounts, and without her knowledge or consent obtained from her also certain pieces of paper, otherwise blank, bearing her genuine signature. Thereupon and unknown to her, he wrote, printed or lettered on three of these pieces of paper above her signature orders directing the payment to himself of funds from said accounts; and between January 17, 1935, and February 9, 1935, he presented these three orders calling for the payment of the aggregate sum of $685 together with the passbooks to the respective branches of the bank, and the sums of money called for by said orders were paid to him by the bank. All of this was done likewise without plaintiff's knowledge or consent.

The amended complaint upon which the trial was had contained two counts. The first alleged merely the existence of the two savings bank deposits; that the total amount thereof was $757; a demand for the return thereof; and the refusal of the bank to deliver any portion of the amount to

plaintiff. The second count was for money had and received. The bank's answer denied that plaintiff had on deposit any greater sum than $32.79, and offered to pay the same to her. The remainder of the answer consisted of general denials. At the trial plaintiff contended that the only issue raised by the pleadings was whether the forged and unauthorized orders so presented and paid by the bank were binding on plaintiff; whereas the position taken by the bank was that it had exercised ordinary care in examining said orders and determining the question of their validity, and that consequently it was not liable for the money so paid out thereon. In its original decision the trial court made no finding upon the question of the exercise by the bank of ordinary care. It merely found affirmatively on the allegations of the amended complaint. However, at the conclusion of the arguments on motion for new trial the court stated, according to the bill of exceptions upon which the appeal was taken, ''that a new trial ought to be granted defendant and that it would grant the motion for a new trial upon the ground that defendant had exercised ordinary care in examining said withdrawal orders presented by the said O'Malley and in paying the said sums to the said O'Malley''. Thereupon counsel for plaintiff suggested that instead of granting a new trial, which necessarily would require the retrial of the issues of fact, the court change its findings and conclusions of law to conform to its expressed views as to the bank's diligence, and then enter an amended judgment in accordance with its modified findings. This was done by incorporating in the modified findings all of the essential facts leading up to the presentation and payment of said withdrawal orders, and adding a specific finding to the effect that the bank exercised ordinary care and diligence in examining said forged withdrawal orders and in making the payments called for thereby; and accordingly its judgment was amended so as to provide that plaintiff recover only the balance remaining in her savings accounts, to wit, $32.05. None of the evidence relating to the above finding is set out in the bill of exceptions; consequently, on this appeal it will be presumed that the finding is supported by the evidence.

Passing for the time being appellant's preliminary point that the action of the trial court in modifying the findings

and amending the judgment was void because neither was signed or entered until more than sixty days after the giving of notice of entry of the original judgment, and proceeding to the merits of the appeal, the determinative question presented is whether in the absence of any modifying agreement, such as a by-law (and admittedly there was none) the bank was liable for the payment of the forged withdrawal orders notwithstanding it exercised ordinary care and diligence in satisfying itself of the propriety of such payment.

■ It is doubtless the general rule that a bank is liable to its depositor for charging his account with a forged check unless the depositor was contributorily negligent or is estopped or has ratified the payment, and that no degree of care on the part of the bank will excuse it from liability. In other words, it is held generally that in the absence of a special contract, the relation of the bank and the depositor is that of debtor and creditor, and the contract of the bank is to pay the money deposited only to the depositor or to persons duly authorized by the depositor; that in this respect it has an absolute obligation which is not fulfilled merely by the exercise of reasonable diligence. (9 Cor. Jur., Secundum, pp. 673 and 730; *Los Angeles Investment Co.* v. *Home Sav. Bank,* 180 Cal. 601 [182 Pac. 293, 5 A. L. R. 1193].)

The above rules are based on the principle that a forged or altered check is void from the beginning and can carry no title.

In the present case the respondent bank, in its brief (see pages 20 and 21 thereof) expressly concedes that such is the law governing commercial banks; and therefore that if forged withdrawal orders such as those here involved were paid by a commercial bank, the bank would be liable therefor and could not charge the depositor therewith (except in cases of estoppel or contributory negligence or ratification of the depositor). ■ But respondent contends that savings banks are governed by a different rule of liability; and that in the case of a savings bank all that is required to be shown in order to relieve it from liability in cashing a forged check or withdrawal order is that the payment was made without negligence on its part, after the exercise of ordinary care and diligence in satisfying itself of the propriety of such payment.

In behalf of appellant it is contended that in the absence of special contract, such as a by-law, a savings bank is bound by the same rule of liability for the payment of a forged withdrawal order as binds a commercial bank; that in the absence of some special agreement, the general law of contracts applies to all debtors and creditors, whether individuals or corporations, and that therefore it is only where the savings bank can show a special contract limiting the bank's liability in some way that the use of ordinary care will excuse the bank from liability for the payment of a forged withdrawal order.

We are of the opinion that appellant's contention must be sustained for the reason that the authorities upon the subject seem to be legion in declaring, contrary to respondent's contention, that a savings bank in the absence of some modifying agreement assented to by its customers is to be governed by the same legal principles applicable to other moneyed institutions. The following are among the numerous authorities so declaring: Zollman on Banks and Banking, Permanent Edition, vol. 2, sec. 1161; 7 Cor. Jur., p. 865; 9 Cor. Jur., Secundum, p. 1412; *Allen* v. *Williamsburg Sav. Bank*, 69 N. Y. 314; *Siegel* v. *State Bank*, 123 N. Y. Supp. 220. Furthermore, the authorities specifically declare that in the absence of some modifying agreement the same rule of liability governs both savings and commercial banks in the case of payment of forged withdrawal orders. Thus in Ruling Case Law (vol. 3, p. 705) and in American Jurisprudence (vol. 7, p. 446) the law is stated as follows: ''As in the case of other banks, a savings bank in the absence of any modifying agreement is authorized to pay deposits and dividends only to the depositor, or his attorney, or in case of his death to his legal representatives, and the bank cannot avoid liability for a payment made upon a forged order to one who fraudulently obtained possession of the deposit book, even by showing that such payment was made in good faith and in the exercise of ordinary care and in accordance with the general practice among savings banks.'' (Citing, among others, *Eaves* v. *People's Sav. Bank*, 27 Conn. 229 [71 Am. Dec. 59]; *Highfield* v. *First Nat. Bank*, 45 Ga. App. 431 [165 S. E. 135]; *Smith* v. *Brooklyn Sav. Bank*, 101 N. Y. 58 [4 N. E. 123, 54 Am. Rep. 653].) In Corpus Juris Secundum

the same doctrine is declared but in slightly different language. It is there said (vol. 9, p. 1429) : "A savings bank, in the absence of any modifying agreement, is authorized to pay deposits only to the depositor or his attorney, or in case of his death to his legal representative, and the bank cannot avoid liability for a payment made on a forged order to one who fraudulently obtained possession of the passbook, even by showing that such payment was made in good faith and in the exercise of ordinary care and in accordance with the general practice among savings banks, since the mere presentation of the passbook is not authority for the payment of the money to another, in the absence of any agreement to that effect." (Citing *Highfield* v. *First Nat. Bank, supra.*) Also may be cited the note found in 105 American State Reports at page 753, wherein the editor says: "It would seem that with respect to payments to persons not representing themselves to be the depositor and obtaining the payment upon the strength of an order purporting to be signed by the depositor, that the same rules would apply as are applicable to commercial banks with respect to forged checks, in the absence of any by-laws, rules or regulations specifically touching such payments."

Respondent insists, however, that regardless of the existence or absence of any modifying agreement, a savings bank is governed by a rule of liability for the payment of forged paper different from that governing commercial banks, and can be held liable only for want of exercise of ordinary care; and in support of its position it relies largely on certain language appearing in the decision in the case of *Evans* v. *Bank of Italy,* 96 Cal. App. 259 [274 Pac. 74], which language was afterwards quoted approvingly in the decision in *Paddock* v. *Anglo-California Trust Co.,* 107 Cal. App. 430 [290 Pac. 550]. It reads: "The duties and liabilities of a commercial bank and a savings bank are not necessarily the same, and in some respects are different. (*Kelley* v. *Buffalo Sav. Bank,* 180 N. Y. 171 [105 Am. St. Rep. 720, 69 L. R. A. 317, 72 N. E. 995].) A savings bank is bound to exercise ordinary care and diligence only. (7 C. J. 871; *Krishkan* v. *New York Sav. Bank,* 93 Misc. 52 [156 N. Y. Supp. 298] ; *Langdale* v. *Citizens Bank of Savannah,* 121 Ga. 105 [104 Am.

St. Rep. 94, 2 Ann. Cas. 257, 69 L. R. A. 341, 344, 48 S. E. 708].) ''

But as pointed out in the authorities already cited, it is only a case where there exists a special modifying agreement between the bank and its depositor that a savings bank is taken out of the operation of the rule of liability governing commercial banks and makes available to it the defense of ordinary care; and as will be noted, the language above quoted makes no mention of the element of a special modifying agreement as the basis for the application of the doctrine of ordinary care. It would appear, therefore, that the language relied upon embodies an incomplete statement of the law; and that being so, we are unable to agree with respondent's contention that the language referred to is here controlling. Moreover, an analysis of the cases cited in the quoted portion of the decision in that case shows that in each of the cited cases a bank by-law was the determining factor which made available the bank's defense of ordinary care. That is to say, in *Kelley* v. *Buffalo Sav. Bank*, 180 N. Y. 171 [72 N. E. 995, 105 Am. St. Rep. 720, 69 L. R. A. 317], there was a by-law relating to the bank's liability where payments were made to persons producing the deposit book. In *Krishkan* v. *New York Sav. Bank*, 93 Misc. 52 [156 N. Y. Supp. 298], there was a similar by-law; while in *Langdale* v. *Citizen's Bank of Savannah*, 121 Ga. 105 [48 S. E. 708, 104 Am. St. Rep. 94, 2 Ann. Cas. 257, 69 L. R. A. 341], the by-law protected the bank in making payments to persons presenting the passbook unless the book was lost and written notice of the loss was given to the bank prior to such payment.

Respondent calls attention to those portions of the opinion in *Kelley* v. *Buffalo Sav. Bank, supra,* wherein the court states in substance and effect that it would be quite impossible for savings banks to operate without being given the benefit of the doctrine of ordinary care; however, it was in fact the existence of a by-law in that case that gave the bank the right to invoke the doctrine of ordinary care and the discussion indulged in by the court to which respondent refers would seem to be directed more to the point that for the reasons therein assigned by the court the bank was justified in adopting a by-law that would make said doctrine available to it as a defense.

Furthermore, so far as appears from the facts stated in the decisions in each of the California cases, in neither of them was the question of whether a savings bank and a commercial bank are governed by different rules of liability made an issue; nor does it appear that the determination of that question was necessary to the decision in either case. In the first case, *Evans* v. *Bank of Italy, supra,* the controlling issue was whether the plaintiff therein, who was suing a savings bank for his deposit, was barred from recovering the same by the doctrine of estoppel; and as respondent expressly admits (see respondent's brief, p. 20) this same defense of estoppel is equally available to a commercial bank (citing *Edelen* v. *Oakland Bank of Savings,* 39 Cal. App. 302 [178 Pac. 737]); and in the second case, *Paddock* v. *Anglo-California Trust Co., supra,* it was held that a savings bank was not liable for accepting a genuine withdrawal order in ignorance of the death of the maker thereof. But under precisely the same rule of liability a commercial bank is likewise protected (see *Sneider* v. *Bank of Italy,* 184 Cal. 595 [194 Pac. 1021, 12 A. L. R. 993]; *Dunlap* v. *Commercial Nat. Bank,* 50 Cal. App. 476 [195 Pac. 688].)

In further support of its position respondent cites a number of cases from other jurisdictions (*Bellantese* v. *Bronx Sav. Bank,* 152 Misc. 325 [273 N. Y. Supp. 885]; *Noah* v. *Bank for Savings in the City of New York,* 171 App. Div. 191 [157 N. Y. Supp. 324]; *Fourth & Central Trust Co.* v. *Rowe,* 122 Ohio St. 1 [170 N. E. 439]; *Saji* v. *Philadelphia Savings Fund Society,* 112 Pa. Super. 149 [170 Atl. 334]; *Daivish* v. *Farmers & Mechanics Sav. Bank,* 177 Minn. 243 [225 N. W. 100]; *Krishkan* v. *New York Sav. Bank, supra; Bulakowski* v. *Philadelphia Savings Fund Society,* 270 Pa. 538 [113 Atl. 553]); but an examination of them discloses that all of them except two involved by-laws. The excepted ones are the Bellantese and Noah cases, in neither of which was the matter of by-laws mentioned. But the defense interposed and sustained in the Bellantese case was the negligence of the depositor; and as already pointed out such a defense is available to a commercial bank; whereas in the Noah case, the court cited in support of its application of the doctrine of ordinary care three cases, namely, *Campbell* v. *Schenectady Sav. Bank,* 114 App. Div. 337 [99 N. Y. Supp. 927];

*Kelley* v. *Buffalo Sav. Bank, supra,* and *Appleby* v. *Erie County Sav. Bank,* 62 N. Y. 12, and an examination of those three cases shows that in each of them the application of the doctrine of ordinary care was based on the existence of a by-law. The other cases to which respondent calls attention do not touch the real point at issue.

On the other hand, appellant has cited the following cases wherein it was held that in the absence of a protecting by-law the doctrine of ordinary care did not serve as a defense: *Ladd* v. *Androscoggin County Sav. Bank,* 96 Me. 520 [52 Atl. 1016] ; *Eaves* v. *People's Sav. Bank, supra.* And in the case last cited, the court went on to say in effect that such was the law regardless of the difficulty in conducting the business under those conditions.

It is our conclusion, therefore, that unless there exists some modifying agreement, by-law, rule, regulation, or statute (and as stated, here there was none), a savings bank is governed by the same rule of liability for the payment of forgeries as governs commercial banks, and that consequently, in those circumstances, the exercise of ordinary care on the part of the bank does not relieve it from liability for such payments. The conclusion we have reached on this branch of the appeal renders the other points urged by plaintiff for reversal unimportant.

The amended judgment is therefore reversed with directions to the trial court to revise its conclusions of law so as to award plaintiff the sum originally awarded, to wit, $717.05, and thereupon to reenter judgment in her favor for that amount.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 29, 1938, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 28, 1938.